[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This is an appeal from the Portage County Court of Common Pleas. Appellant, Helen Reagan, d.b.a. Southeast Trucking Company, appeals from a judgment entry granting summary judgment for appellees, Frieda Mulhollen ("Mulhollen") and Doris Hershberger ("Hershberger").
Appellant has been doing business as Southeast Trucking Company ("Southeast") since 1977, when she received the company as part of the property division in her divorce. Appellant's business consisted of contracting with truck owner/operators to transport materials for her customers. Southeast has been transporting concrete sewer pipe from Essroc's plant in Diamond, Ohio, since 1957, and appellant had continued this business relationship during the time period prior to the filing of this action. In fact, appellant's entire business was devoted to hauling Essroc pipe in the interval immediately preceding this dispute.
In September 1991, a sequence of events led to seven of appellant's drivers ceasing their driving relationship with appellant, choosing to realign themselves with Ranger Transportation, Inc. ("Ranger"), a carrier that began to compete with appellant as a shipper for Essroc pipe. Appellant contends that these drivers were lured away from her company as a result of a conscious and improper effort on the part of Ranger, Essroc, Hershberger, and Mulhollen to damage her business. Appellant stated that Essroc's plant manager, Wesley Van Kuren ("Van Kuren"), who was charged with procuring shippers for Essroc's products, was angry with appellant's services due to one incident when a construction company demanded that their pipe be delivered by appellant's trucks instead of an alternate shipper. Appellant continued to allege that because of this occurrence and the perceived loss of authority on the part of Essroc to select shippers of its choice, Van Kuren decided that another shipper should be brought in to replace appellant. Essroc references other incidents that caused a general dissatisfaction with appellant, specifically, the inability to send additional trucks when requested, unauthorized drivers being dispatched to haul this pipe as specifically trained drivers were required, equipment problems in appellant's trucks, difficulty in reaching appellant's dispatcher, and a change in management structure at Southeast. Additionally, it is undisputed that Essroc has continuously contracted with several carriers to haul their pipe.
A meeting was held to discuss the possibility of starting a new trucking company that could haul Essroc pipe, although these discussions never led to the creation of a new trucking company. Van Kuren and appellees, Mulhollen and Hershberger, attended this meeting. Ultimately, Ranger, an established company, applied with PUCO for a license to transport Essroc pipe, since such hauling requires a special permit. Appellant initially opposed Ranger's application, but later withdrew her objection.
In September 1991, Mulhollen terminated her employment with Essroc, where she had been working as a dispatcher. She then began her employment with Ranger, which had by this time received PUCO approval to haul Essroc pipe.
Hershberger, who is appellant's sister, had done some bookkeeping for appellant at her home in the hours after completing her working day at her regular full-time job. She was compensated by appellant through a circuitous periodic additional payment given to her husband, who drove for appellant and delivered Essroc pipe. Hershberger admitted that she provided the names, dates of birth, social security numbers and detailed the compensation packages of appellant's drivers, in particular her husband, to Ranger. Hershberger apparently has not taken a position or received direct compensation from Ranger, except that her husband now drives and delivers Essroc pipe for Ranger.
In August 1991, Ranger had a meeting with seven of appellant's drivers, during which the compensation package being offered by Ranger was discussed. These drivers were then under contractual personal service lease arrangements that obligated them to drive their trucks for appellant. Ranger made offers to these drivers to join their carrier company.
Appellant, unhappy with these developments, recovered any records that remained in Hershberger's home in August 1991, at which point Hershberger ceased doing bookkeeping for appellant. The foregoing seven drivers ultimately leased their equipment and contracted their services to Ranger and left appellant's employment after giving notice of the termination of their contracts with appellant. Ranger now serves as a carrier for Essroc, and the seven drivers act in the same capacity for their new carrier as they had with appellant. Appellant has also remained a carrier for Essroc, although at a significantly reduced frequency and tonnage than was the case previously. While appellant's contract with Essroc did not change during the proceedings in the trial court, her shipping tonnage remained near the contractual minimum, rather than the greater amounts that had been shipped in previous years.
Appellant filed a six-count complaint against Ranger, Essroc, Hershberger, and Mulhollen on September 16, 1991. Appellant filed her first amended complaint on November 27, 1991. All defendants moved for summary judgment. Pursuant to Civ.R. 41(A)(1), appellant dismissed Mulhollen on January 26, 1994. On February 9, 1994, the trial court granted summary judgment in favor of Essroc and Hershberger, while overruling Ranger's motion for summary judgment. Also, appellant dismissed Ranger on May 20, 1994, under Civ.R. 41(A)(1).
Appellant then filed a notice of appeal from the judgment entry granting summary judgment in favor of Essroc and Hershberger. This court dismissed that appeal because it did not arise from a final appealable order on the basis that Civ.R. 41(A)(1) permits dismissal of entire actions, not claims; thus, a dismissal of claims under Civ.R. 41(A)(1) that does not dismiss the entire action is a nullity. Reagan v. Ranger Transp., Inc. (1995),104 Ohio App.3d 15. Thus, we held that "the dismissals of Mulhollen and Ranger were nullities and the claims against [those] parties [remained]." Id. at 18.
On July 24, 1995, appellant dismissed her claim against Ranger with prejudice as part of a settlement agreement. On September 28, 1995, the trial court granted Mulhollen's motion for summary judgment. Appellant filed a notice of appeal, basically arguing that the trial court erred in granting summary judgment in favor of Essroc, Hershberger, and Mulhollen. This court affirmed the trial court's entry of summary judgment with respect to Essroc.Reagan v. Ranger Transp., Inc. (Aug. 9, 1996), Portage App. Nos. 95-P-0123 and 95-P-0124, unreported. However, we reversed the trial court's judgment regarding Hershberger and Mulhollen, holding that they did not carry their burden as moving parties in a summary judgment proceeding under the mandates of Dresher v.Burt (1996), 75 Ohio St.3d 280. Specifically, we concluded that "[t]he summary judgment motions that were filed by Hershberger and Mulhollen [did] not * * * reference the record to demonstrate that they also are entitled to summary judgment on the specific claims against them, which is in clear violation of the Dresher mandate."Reagan, supra, at 11.
On remand, Mulhollen and Hershberger both filed separate motions for summary judgment, and appellant filed briefs in opposition. On April 23, 1997, appellant filed a motion to file a second amended complaint to add a claim against Mulhollen and Hershberger for conversion of a trade secret under R.C.1333.51,[1] which motion was granted by the trial court in a judgment entry filed on April 29, 1997. However, both Mulhollen and Hershberger filed motions requesting that the trial court reconsider its judgment granting leave to file a second amended complaint. On July 14, 1997, the trial court held an oral hearing on the motion to grant leave to file the second amended complaint, and in a judgment entry filed on August 21, 1997, the court ordered that appellant's second amended complaint be stricken. Furthermore, in a judgment entry filed on August 28, 1997, the court granted the motions for summary judgment of both Hershberger and Mulhollen.
From these judgment entries, appellant has appealed, and raises the following assignments of error:
 "[1.] The trial court erred in striking [a]ppellant's [s]econd [a]mended [c]omplaint.
 "[2.] The trial court erred in granting summary judgment in favor of D. Hershberger and F. Mulhollen."
In the first assignment of error, appellant contends that the trial court erred in striking appellant's second amended complaint. Civ.R. 15(A) states:
 "Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. * * *"
In Butcher v. Three M Homes, Inc. (March 31, 1995), Geauga App. No. 93-G-1783, unreported, at 13, this court held:
 "Our reading of Civ.R. 15(A) indicates that a liberal amendment policy is favored. However, the decision whether to grant a motion for leave to amend a complaint pursuant to Civ.R. 15(A) is within the sound discretion of the trial court. Hoover v. Sumlin (1984), 12 Ohio St.3d 1, 6. Absent an abuse of discretion, an appellate court will not reverse the trial court's decision to overrule a motion for leave to amend a complaint. Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 175."
The Supreme Court of Ohio held in Peterson:
 "The mandate of Civ.R. 15(A) as to amendments requiring leave of court, is that leave `shall be freely given when justice so requires.' Although the grant or denial of leave to amend a pleading is discretionary, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." 34 Ohio St.2d at 175.
In the case sub judice, appellant filed the original complaint on September 16, 1991, and amended the complaint on November 27, 1991. Lengthy discovery ensued in which all defendants moved for summary judgment at least once, and appellees in this matter moved for summary judgment twice. Appellant's motion to amend the complaint a second time, to add a cause of action for conversion of a trade secret under R.C. 1333.51, was filed in April 1996, over five years after the initial complaint had been filed, and less than six months before the trial in this matter was scheduled.[2] Based on the length of the litigation, the exhaustive nature of the discovery, and the close temporal proximity to trial, we cannot conclude that the trial court abused its discretion in striking appellant's second amended complaint. Appellant's first assignment of error is without merit.
In the second assignment of error, appellant argues that the trial court erred in granting appellees' motions for summary judgment. In Dresher, the Supreme Court of Ohio held:
 "[W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (First emphasis added.) 75 Ohio St.3d at 293.
Previously, we held that Mulhollen and Hershberger did not carry their initial burden of identifying those portions of the record demonstrating the absence of a genuine issue of material fact on appellant's claims. Upon remand, appellees, after obtaining leave of court, filed renewed motions for summary judgment that contain proper references to the record as required by Dresher. Thus, they have satisfied this portion of their burden under Dresher.
Appellant asserts a claim against appellees for the intentional interference with a contract and/or tortious interference with a business relationship. Appellant contends that our prior decision was erroneous because appellant actually alleged the tortious interference with a business relationship, and not intentional interference with a contract. In light of this argument, we will address appellant's claim under the elements of each of these torts.
In Kenty v. Transamerica Premium Ins. Co. (1995), 72 Ohio St.3d 415, paragraph two of the syllabus, the Supreme Court of Ohio held:
 "In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages."
In the case at bar, the undisputed evidence in the record demonstrates that the drivers never breached their contracts with appellant. As we stated in the previous appeal of this matter:
 "The submissions in this case also reveal that the contractual arrangements with the drivers were at-will, with * * * both parties to each agreement having the right to terminate the relationship at any time with notice.
 "[T]he drivers did not breach any contract, they merely provided notice of intent to terminate the contractual arrangement, an act that was expressly provided for in the contracts. Furthermore, no allegation has been made that another contract was interfered with or that these contracts were improperly terminated in accordance with their terms." (Emphasis sic.) Reagan, supra, at 13.
Therefore, the trial court properly granted appellees' motions for summary judgment regarding appellant's claims on the basis of interference with a contractual relationship because the drivers never breached their contracts.
If appellant's causes of action against appellees are viewed as claims of interference with a business relationship, the analysis is different, but leads to the same result. Several Ohio courts have adopted the rule for intentional interference with a business relationship as set forth in 4 Restatement of the Law 2d, Torts (1979) 20, Section 766B:
 "One who intentionally and improperly interfered with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of:
 "(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
 "(b) preventing the other from acquiring or continuing the prospective relation.'" See, also, Hoyt, Inc. v. Gordon Assoc., Inc. (1995), 104 Ohio App.3d 598, 603; Walter v. Murphy (1988), 61 Ohio App.3d 553, 555.
The Supreme Court of Ohio has explained:
 "The torts of interference with business relationships and contract rights generally occur when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 14.
The primary distinction between tortious interference with a contractual relationship and tortious interference with business relations is that interference with business relations applies to "intentional interference with prospective contractual relations, not yet reduced to contract." 4 Restatement of the Law 2d, Torts (1979) 20, Section 766B, Comment a. Additionally, this tort is intended to apply to a terminable at will contract. 4 Restatement of the Law 2d, Torts (1979) 22, Section 766B, Comment c. In summary, the substantive issue here is whether appellees, improperly, and without privilege, induced or otherwise purposely caused the seven drivers to terminate their business relations with appellant. See A B-Abell, 73 Ohio St.3d at 14.
In the case at bar, it is undisputed that the seven drivers terminated their business relationships with appellant; thus, we must address the other elements of the tort. The first issue here is whether appellees' conduct was improper. The following factors are to be considered in determining whether interference was improper pursuant to 4 Restatement of the Law 2d, Torts (1979) 26-27, Section 767:
"(a) the nature of the actor's conduct,
"(b) the actor's motive,
 "(c) the interests of the other with which the actor's conduct interferes,
 "(d) the interests sought to be advanced by the actor,
 "(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
 "(f) the proximity or remoteness of the actor's conduct to the interference and
"(g) the relations between the parties."
In applying these factors to the case sub judice, appellees' conduct was not improper. As we stated previously, the evidence shows that the drivers "left appellant for greater compensation at Ranger, whether it was in the form of a higher percentage payable per load, retirement benefits or opportunities to work in the winter when appellant's operations traditionally slowed down."Reagan, supra, at 14. Further, we noted that "each driver testified that it was the greater compensation packages and opportunities that they perceived joining Ranger would provide that led them to leave appellant." Id.
Additionally, much of the information that was allegedly disseminated regarding appellant's business operations was required to be filed with PUCO. R.C. 4923.05 and 4923.06. See, also, Ohio Adm. Code 4901-5-05 and 4901-5-06. Therefore, these filings are public information. R.C. 4901.12; 4905.07. In particular, much of the information allegedly procured from appellant by Mulhollen was subject to public disclosure pursuant to R.C. 4923.05(F), which requires disclosure to PUCO of the contract between the shipper and the customer. The contact must include the contract price of the transportation, the basis of the rates charged and computed, and the frequency of shipments. R.C.4923.05(F). Thus, the contract at issue between Essroc and appellant was not entirely a private matter. Moreover, Hershberger could have easily learned much of the information about the compensation packages of appellant's drivers through her husband, who drove for appellant before leaving to drive for Ranger.
In summary, the drivers left appellant for Ranger in pursuit of a better compensation package, not as the result of any improper conduct by appellees in participating in and facilitating meetings that resulted in the drivers' departure. There is no evidence to the contrary here. Furthermore, much of the information provided to Ranger was public through PUCO filings. Thus, the evidence does not show that either Mulhollen or Hershberger acted improperly in inducing the drivers to leave appellant. The trial court properly granted summary judgment with respect to appellant's claim of tortious interference, whether it is treated as tortious interference with a contract or as tortious interference with a business relation.
Appellant also maintains an action for civil conspiracy, which is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." LeFort v. Century21-Maitland Realty Co. (1987), 32 Ohio St.3d 121, 126. See, also,Kenty, 72 Ohio St.3d at 419. However, a plaintiff must be successful on the underlying tort claim in order to advance a cognizable cause of action for civil conspiracy. Crosby v. Beam
(1992), 83 Ohio App.3d 501, 515. In the instant matter, the trial court properly granted summary judgment on the underlying tort; therefore, the trial court properly granted summary judgment on the civil conspiracy claim.
Furthermore, we also note that had appellant pleaded a claim of conversion of a trade secret pursuant to R.C. 1333.51, summary judgment would have been appropriate on that claim as well. R.C.1333.51 states:
"(A) As used in this section:
"* * *
 "(3) `Trade secret' means the whole or any portion or phrase of any * * * business plans, financial information, or listing of names, addresses, or telephone numbers, which has not been published or disseminated, or otherwise become a matter of general public knowledge. Such * * * business plans, financial information, or listing of names, addresses, or telephone numbers is presumed to be secret when the owner thereof takes measures designed to prevent it, in the ordinary course of business, from being available to persons other than those selected by the owner to have access thereto for limited purposes."
"* * *
 "(B) No person shall, * * * with intent to convert a trade secret to his own use or the use of another, obtain possession of or access to an article representing a trade secret.
 "(C) No person, having obtained possession of an article representing a trade secret or access thereto with the owner's consent, shall convert such article to his own use or that of another person, or thereafter without the owner's consent make or cause to be made a copy of such article, or exhibit such article to another."
In Sonkin Melena Co., L.P.A. v. Zaransky (1992), 83 Ohio App.3d 169,182, in addressing a claim under R.C. 1333.51, the court held that "[a] party claiming a trade secret must take affirmative steps to protect whatever information it deems secret before relief can be granted."
In the case at bar, appellant attempted to assert a claim against Mulhollen under R.C. 1333.51(B) and against Hershberger pursuant to R.C. 1333.51(C). However, the record does not reveal any steps taken to assure that the alleged trade secrets were kept confidential. Moreover, a review of appellant's second amended complaint, which was stricken, does not include any such allegation. Also, we reiterate that much of the information involved was public through PUCO filings. Thus, assuming,arguendo, that appellant properly raised a claim of conversion of trade secret, summary judgment on that claim also would have been appropriate. Appellant's second assignment of error is not well-taken.
For the foregoing reasons, appellant's assignments of error are without merit. The judgment of the Portage County Court of Common Pleas is affirmed. _______________________________ PRESIDING JUDGE DONALD R. FORD
O'NEILL, J.,
O'NEILL, J., (JOSEPH), Ret., Seventh Appellate District, sitting by assignment, concur.
[1] R.C. 1333.51 was repealed, effective July 1, 1996, by 1995 Am.Sub.S.B. No. 2. However, the repealing statute did not contain a retroactivity clause, therefore, R.C. 1333.51 is applicable to the purported conversion of trade secrets in the instant case.State ex rel. The Plain Dealer v. Ohio Dept. of Ins. (1997),80 Ohio St.3d 513, 523.
[2] The parties have discussed in their briefing that the issue of trade secrets was raised in appellant's first amended complaint. Even if appellant had properly raised this issue, summary judgment would have been appropriate on this claim for the reasons articulated in our analysis of the second assignment of error.