DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of divorce entered in the Wood County Court of Common Pleas. Because we conclude that the trial court acted within its discretion in its property division award, we affirm that portion of its decree. However, because the child.
 {¶ 2} support award is not properly supported, we reverse that portion of the judgment and remand for reconsideration.
 {¶ 3} Appellant/cross-appellee ("appellant") is Teresa S. Frick. Appellee/crossappellant ("appellee") is Raymond L. Frick. The parties were first married in 1979. In 1985, appellee, with his brother, started a sports bar type restaurant near South Dayton, Ohio. They called the restaurant "Fricker's." The parties dissolved their marriage in the Montgomery County Court of Common Pleas in 1987. Appellee was awarded all of his interest in Fricker's. Appellee eventually bought out his brother's interest and became Fricker's sole owner.
 {¶ 4} The parties' separate living arrangements after the dissolution was short lived. At some point in late summer or early fall of 1988, the two again began living together. They remarried on August 9, 1991. During this time, Fricker's in East Dayton was opened as was a Perrysburg Fricker's. Appellee was the sole shareholder in East Dayton, while appellant received 32 percent of the stock in the Perrysburg restaurant.
 {¶ 5} Following their remarriage, the parties opened (and sometimes closed) multiple restaurants throughout Ohio, each organized as a separate subchapter "S" corporation. Organizationally, Fricker's created two management companies, Fricker's Enterprises, Inc. for the Northern, Ohio restaurants and Fricker's U.S.A., Inc. for the Southern, Ohio restaurants. In 1995, the parties formed Fricker's Progressive Concepts, Inc. to hold Fricker's intellectual properties.
 {¶ 6} Both management corporations and the intellectual property company were solely owned by appellee. Appellee was also the sole owner of the restaurants in the southern district. Appellant held a minority position in the restaurants in the northern region (Findlay, 18 percent; Sylvania, 24 percent; Bowling Green, 32 percent; Lima, 49 percent; Maumee, 32 percent; Sandusky, 49 percent.) The parties also accumulated substantial commercial and residential property during this time.
 {¶ 7} In 1995, the parties explored, but eventually abandoned, a plan to take Fricker's public. In 1998, the company hired an experienced financial officer and operations director. With these additions, the company also refinanced $6.9 million in debt.
 {¶ 8} On October 23, 1998, appellant sued for divorce, alleging, inter alia, incompatibility. Appellant sought custody and support for two children born during the marriage, as well as a reasonable property division. Appellee responded, admitting incompatibility, but countersuing for divorce, requesting a shared parenting plan and equitable property division.
 {¶ 9} The parties eventually agreed upon a shared parenting arrangement.
 {¶ 10} At trial, as here, the principal item of contention was the valuation and disposition of the parties' interests in the Fricker's corporations. Trial commenced before a magistrate on November 21, 2000, and continued at varying intervals until August 16, 2001. Each party presented extensive expert testimony concerning valuation of the Fricker's businesses.
 {¶ 11} Prior to the conclusion of the hearing, the parties stipulated to the disposition of certain properties and the valuation of others. Those stipulations are not challenged on appeal.
 {¶ 12} In the end, the magistrate granted divorce and concluded that the two marriages of these parties were constructively one. The magistrate ordered that all marital property, including stock in the Fricker's corporations, be divided equally. The magistrate also found that certain expert witness fees and other expenses had been paid for both parties out of Fricker's funds, but ordered an adjustment in favor of appellant to equalize the amount by which the corporation's contribution to appellee's expenses exceeded the contribution to appellant's. Beyond this adjustment, the magistrate refused to award spousal support or attorney fees. The magistrate ordered appellee to pay appellant child support in the amount of $4,000 per month, based on the parties' total income of $758,258.
 {¶ 13} Both parties objected to the magistrate's decision. On review, however, the court adopted the decision with one exception. The court found that it was improper to "tack" the two separate marriages together. As a result of this conclusion, the court ruled that the division of the parties' Fricker's corporate interests should be amended. The court then accepted the opinion of appellant's expert appraiser that the value of the corporations, less real estate, as of March 31, 2000, was $4.8 million. From this, the court deducted $1.4 million, the amount the court found appellee's separate interest was worth before the 1991 remarriage. The court ordered the $3.4 million differential split equally. The result was an award of 65 percent of all the Fricker's entities and shareholder receivables to appellee and 35 percent to appellant.
 {¶ 14} From this judgment of divorce, the parties now bring this appeal. Appellant sets for the following five assignments of error:
 {¶ 15} "Assignment of Error No. 1: Where parties do not trace proceeds from `separate' property, the proceeds should be considered martial property. The trial court thus erred in allocating $1.4 million in business value to Appellee as separate property when Appellee failed to trace and properly value the proceeds of the separate property from the second marriage to the time of divorce.
 {¶ 16} "Assignment of Error No. 2: Trial courts have discretion to make equitable awards. One equitable decision trial courts can make is to tack together two marriages for the purpose of dividing property. The trial thus erred by not tacking together the two marriages when it would have been equitable to do so.
 {¶ 17} "Assignment of Error No. 3: The trial court's decision to reject a magistrate decision should be reversed when the record affirmatively demonstrates that the trial court is in error. The trial court erred, therefore, when it made findings of fact and conclusions of law wholly contradictory to the record.
 {¶ 18} "Assignment of Error No. 4: Trial courts can reverse jurisdiction to modify spousal support even when the initial spousal support order is zero when said reservation is for a limited time and equitable under the circumstances. The trial court erred by not reserving jurisdiction to modify spousal support where Teresa's financial position will likely change.
 {¶ 19} "Assignment of Error No. 5: A spouse using tactics to prolong litigation can be forced to pay the other spouse's attorney fees even if the non-payor spouse can afford to pay the attorney fees. Ray prolonged litigation thus the trial court should have awarded Teresa attorney fees."
 {¶ 20} Appellee raises the following eight cross-assignments of error:
 {¶ 21} "Assignment of Error No. 1.
 {¶ 22} "The Trial Court erred in failing to conduct a hearing to determine if a buyout was viable; and in awarding such stock in all Frick Corporations so as to make Teresa a 35% shareholder in each enterprise.
 {¶ 23} "Assignment of Error No. 2.
 {¶ 24} "The Trial Court erred in adopting the opinion of Mr. Kleeman that the Frick Corporations, as of the time of trial, has a value of $4.8 Million.
 {¶ 25} "Assignment of Error No. 3.
 {¶ 26} "The Trial Court erred in failing to follow statutory law in ordering Ray to pay Teresa $48, 000 annually in child support.
 {¶ 27} "Assignment of Error No. 4.
 {¶ 28} "The Trial Court failed to follow statutory law in ordering an unequal division of property.
 {¶ 29} "Assignment of Error No. 5.
 {¶ 30} "The Trial Court failed to allocate debt responsibility equitably between the parties.
 {¶ 31} "Assignment of Error No. 6.
 {¶ 32} "The Trial Court erred in characterizing a corporate business asset as the personal property of Ray.
 {¶ 33} "Assignment of Error No. 7.
 {¶ 34} "The Trial Court's order that `the parties shall be awarded one-half of the commercial real estate property as stipulated to, with a total value of $3,654,500.00 to each party' is in error to the extent it does not include a reduction for mortgages.
 {¶ 35} "Assignment of Error No. 8.
 {¶ 36} "The Trial Court erred in failing to find that Fricker's Progressive Concepts, Inc. was Ray's separate property."
 Tracing Property {¶ 37} In her first assignment of error, appellant advances two arguments in support of the proposition that the trial court's treatment of appellee's premarital property was erroneous. First, appellant argues that it was incumbent on appellee, and ultimately the court, to trace the value of the corporations that the court found were appellee's separate premarital property. Failure of appellee to meet this burden, appellant maintains, negates the property's separate character after it is commingled with value added during the marriage.
 {¶ 38} Second, appellant insists that because appellee's expert appraiser valued appellee's separate corporate property on December 31, 1991, rather than the date of the marriage, August 9, 1991, the appraisal is inaccurate and, therefore, should not be used.
 {¶ 39} R.C. 3105.171 provides that the commingling of separate property with other property does not destroy the identity of the separate property unless the separate property cannot be traced. The party seeking to establish that an asset or a portion of an asset is separate must present evidence sufficient to establish the asset's separateness by a preponderance of the evidence. Zeefe v. Zeefe (1998),125 Ohio App.3d 600, 614. Appellant cites numerous cases which she asserts demand detailed tracking of funds to prove separateness. Hannav, Hanna 6th Dist. No. L-01-1351, 2003-Ohio-1401 (active brokerage account); Bryant v. Bryant (Jan. 29, 1999), 5th Dist. App. No. 97CA8 (active stock portfolio); Williams v, Williams
(1996), 116 Ohio App.3d 320 (cash proceeds from sale of car.)
 {¶ 40} All of appellant's examples involve cash or cash equivalents. The property here is appellee's interest in several businesses, reflected by his ownership in stock in certain closely held corporations. With such property, while the increase in the value of the business which occurs during the marriage due to the active contribution of either or both spouses is martial property subject to division, Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 400, passive value, which includes the original value of the asset and any appreciation not due to the parties' contributions, remains separate property. Id. at 401; R.C. 3105.171(A)(6)(a)(iii).
 {¶ 41} In this matter, although the parties dispute the extent of appellee's contribution to the business, it is undisputed that both parties were actively involved in the business and,
 {¶ 42} thus, responsible for its appreciation. Consequently, as the trial court found, the business appreciation occurring during the marriage was a marital asset subject to division. To determine the amount of appreciation to be divided, the court took the value of the business as estimated by appellant's expert and subtracted the value of the business during the year the parties were remarried. In our view, this was proper.
 {¶ 43} With respect to the valuation date of appellee's separate interest, a valuation date for assets is, "* * * dictated largely by pragmatic considerations." Berish v. Berish
(1982), 69 Ohio St.2d 318, 320. Here, appellee's expert relied on, inter alia, the income tax returns for 1991 in valuing appellee's marital interests. Since the businesses report on a calendar year, this reliable information included income until the end of 1991. Moreover, the expert excluded entirely from his computations considerations of a Fricker's which had been incorporated prior to the remarriage, but did not open until after the marriage. In our view, the court acted in a practical matter and well within its discretion in accepting appellee's expert's valuation.
 {¶ 44} Accordingly, appellant's first assignment of error is not well-taken.
 Tacking, Reservation of Jurisdiction and Attorney Fees. {¶ 45} In her second, fourth and fifth assignments of error, appellant states a series of legal propositions which, subject to the discretion of the court, are correct. Appellant then concludes that since the court did not exercise its discretion to her advantage, the court erred.
 {¶ 46} Appellant states in her second assignment of error that courts can "tack" two marriages together for purposes of dividing property. In divorce cases, Ohio law grants the court discretion to classify and distribute assets accumulated "during the marriage." Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355. Decisions on matters vested in the court's discretion will not be reversed on appeal absent an abuse of discretion. The term "abuse of discretion" means more than an error of law or a mistake in judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 47} "(2) `During the marriage' means whichever of the following is applicable:
 {¶ 48} "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 {¶ 49} "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' means the period of time between those dates selected and specified by the court." R.C.3105.171(A)(2).
 {¶ 50} The statute is the source of the court's authority for what appellant characterizes as "tacking" marriages. An analysis of R.C. 3105.171(A)(2), however, reveals that the standard definition of "during the marriage" is the period between the date of the marriage and the final divorce hearing. Only when the court is convinced that application of R.C. 3105.171(A)(2)(a) would be inequitable may the court alter those dates. In this matter, although the magistrate and the court apparently differed on this issue, the court's decision is neither arbitrary, unreasonable nor unconscionable. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 51} In her fourth assignment of error, appellant complains that the trial court should have reserved jurisdiction to modify spousal support as it appears likely that she will be losing her job at Fricker's. In her fifth assignment of error, she insists that she should have been awarded attorney fees. Again, the trial court has the discretion to both reserve spousal support jurisdiction and award attorney fees. Okos v. Okos (2000),137 Ohio App.3d 563, 580; Hess v. Riedel-Hess, 153 Ohio App.3d 337,340, 2003-Ohio-3912, at ¶ 12.
 {¶ 52} The trial court expressly addressed both issues, concluding that appellant was financially capable of paying her own attorney fees and that any delay in the proceedings was due to the contentiousness from both sides. With regard to reservation for spousal support, the court noted that appellant continues to earn $175,000 annually from Fricker's and obtained a sizeable child support award. We might also note, she obtained a property award worth literally millions of dollars. Given this reasoning, we detect no abuse of the court's discretion in either declining attorney fees to appellant or refusing to reserve spousal support jurisdiction. However, the trial court may wish to revisit this issue in light of our decision concerning child support. Accordingly, we decline to address appellant's fourth and fifth assignments of error.
 Magistrate's Decision. {¶ 53} In appellant's remaining assignment of error, she suggests that the trial court erred in rejecting the magistrate's decision. Evidence of this error, appellant maintains, may be found in the discrepancy of findings between the magistrate's decision and the court's judgment. These discrepancies are: 1) contrary to the judgment, appellee's valuation expert never expressed an opinion on the increase of the business value during the marriage; 2) the magistrate expressly found evidence of appellee's financial misconduct, while the court expressly found there was no misappropriation of funds; 3) the court found the parties had treated the business as separate property, while the magistrate found that any separate property the parties had in the business had been intermingled.
 {¶ 54} Civ.R. 61 directs the court at every stage to disregard any error or defect in the proceedings which does not affect the substantial rights of the parties. Irrespective of whose valuation expert testified to it, there was expert testimony setting the value of the business at the end of 1991 and at the time of the trial. From this, the court computed the value differential.
 {¶ 55} There is, arguably, see, infra at p. 24, a discrepancy between the magistrate's report and the judgment entry concerning financial misconduct and whether the parties treated the business as separate property. Appellant, however, fails to direct our attention to any substantive significance of these discrepancies. Absent evidence of any effects of these discrepancies, or errors which might be contained therein, such irregularities are harmless. Accordingly, appellant's third assignment of error is not welltaken.
 Separate Business Property {¶ 56} In his written closing argument, appellee proposed that, in the event that the court ordered that appellant retain an interest in any or all of the Fricker's businesses, it allow appellee to buy out appellant's interest. Appellee even suggested various monthly payment plans, adjustable depending on the valuation the court determined. The court elected not to impose such a buyout. Instead, the court took appellant's expert evaluation of the business, less real estate, as of March 31, 2000 ($4.8 million); and deducted appellee's expert evaluation of the business as of December 31, 1991 ($1.4 million). The court divided the $3.4 million remainder in half and awarded the sum, $1.7 million, to each party.
 {¶ 57} Since appellant's $1.7 million distributive share constituted approximately 35 percent of the total year 2000 valuation of the business, the court ordered that the parties transfer stock in the various businesses so that appellant becomes vested with 35 percent of the stock in each of the corporate entities. The court suggested that the parties could continue to run the business in partnership, divide the various Fricker's entities among themselves, or one party could borrow sufficient funds to buy out the other.
 {¶ 58} In his first assignment of error, appellee contends that the trial court abused its discretion in awarding appellant 35 percent in all of the Fricker's entities, including appellee's separate property. Moreover, according to appellee, the trial court should have ordered a hearing to ascertain whether a buyout was possible.
 {¶ 59} "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property in which one or both spouses have an interest." R.C. 3105.171(B).
 {¶ 60} Although favoring disbursement of separate property to its owner, the statute does not prohibit the award of some or all of one party's separate property to another. Hupp v. Hupp (Mar. 6, 1995), 5th Dist. No. 94-CA-86. R.C. 3105.171(D), in material part, provides:
 {¶ 61} "* * * If a court does not disburse a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors that it considered in making its determination that the spouse's separate property should not be disbursed to that spouse."
 {¶ 62} Here, the trial court chose to redistribute the parties' business interests in recognition of the undisputed fact that both had contributed substantially to the success of the business. Moreover, the trial court stated, "this approach recognizes [appellee's] separate property granted in the first divorce and also rewards [appellant] for her efforts to enhance the business enterprises resulting in appreciated value." The court also noted that, by using a percentage allocation, any valuation changes the business may have incurred during the extended litigation were reflected in the award.
 {¶ 63} In our view, the trial court's award was neither arbitrary nor unreasonable. With respect to ordering a hearing to explore a buyout option, the court clearly rejected the invitation to embroil itself in such an exercise. The trial court stated that the percentage award solved a current valuation problem due to litigation delays. This was a reasonable determination and antithetical to imposing any buyout terms. Consequently, the trial court did not abuse its discretion in either redistributing a portion of appellee's separate property or in denying appellee's request for a hearing.
 {¶ 64} Accordingly, appellee's first assignment of error is not well-taken.
 Appellant's Expert Valuation. {¶ 65} In his second assignment of error, appellee attacks the trial court's decision to accept the valuation of the Fricker's businesses offered by appellant's expert. Appellee insists his own valuation expert was better qualified and his methodology more persuasive. Moreover, appellant's expert offered a range of values for the business ranging from $4.4 million to $6.8 million. For the court to merely pick one of those values, even the lowest, is arbitrary, according to appellee.
 {¶ 66} We have carefully reviewed the testimony of both parties' expert business appraisers. Both come with impeccable credentials and experience. Indeed, each was highly differential to the work of the other. Each utilized essentially the same formulas applied to the same data. Each offered a range of values resulting from the application of a variety of commonly utilized valuation techniques. Each explained in detail the reliability of the techniques employed and the reasons the expert elected to employ one valuation over another.
 {¶ 67} There is no basis for appellee's argument that the court should have rejected appellant's expert as qualitatively inferior to appellee's. With respect to whether choosing appellant's expert's lowest valuation was arbitrary, it must be pointed out that each of the values advanced by both parties' experts were well reasoned and well supported, so the estimates of the value themselves were neither arbitrary nor unreasonable. The reason the court gave for selecting appellant's valuation was that, "* * * this valuation approach is fair to both parties * * *." Fairness is, by definition, the purpose of equity. Accordingly, appellee's second assignment of error is not well-taken.
 Child Support. {¶ 68} In his third assignment of error, appellee complains that the trial court improperly ordered a deviation from the statutory child support guidelines.
 {¶ 69} During the proceedings, the parties agreed to a shared parenting plan for their two children. Appellee agreed to a temporary child support order.
 {¶ 70} Following the final hearing, the magistrate entered the following conclusion with respect to child support:
 {¶ 71} "The calculation of child support shall be pursuant to the required supreme court worksheet. Included in the worksheet shall be the salaries and wages that each party receives, plus all other income from interest, rents or Subchapter C income. The best interests of the children are served by them receiving the standard of living that would have been afforded them had their parents stayed together. A deviation from the child support worksheet calculation is necessary to accomplish this proper calculation since the total incomes of the parties far exceeds the $150,000 which is the maximum joint figure in the guidelines. In consideration of the ages of the children, the expenses necessary to raise them at a standard of living that they had been accustomed and their activities, the deviated amount on the worksheet is in their best interest. [Appellee's] time with the children is not significantly greater than a normal schedule, thereby not creating a basis for downward deviation."
 {¶ 72} Attached to the magistrate's decision was a child support computation worksheet showing a combined family income of $758,258. Of this figure, 58.1 percent ($440,549) is attributable to appellee and the remaining 41.9 percent ($317,703) belongs to appellant. In conformity with the basic child support schedule contained in R.C. 3113.215, the magistrate determined that the amount payable under the $150,000 ceiling of the support schedule for two children was $21,971. Applying the income percentages attributable to each party, the magistrate concluded that appellee's annual support obligation in the schedule was $12,765, while appellant's was $9,206. To this point, the parties agree that the magistrate's calculations were proper.
 {¶ 73} Next the magistrate attempted to account for the family income above the $150,000 support schedule ceiling: $608,258. The magistrate's computational note states: "Applying the marginal rate of 10% to the excess is $60,826, with [appellee's] 58.1% shr = [$35,339.91 annually divided by 12] $2,944.99 [monthly]. Adding that to $1,063.75 [12,765 divided by 12] equals $4,008.74, rounded to $4,000."
 {¶ 74} On the "Final Figure" line of the worksheet under "Column I Father" is listed an annual obligation of $48,000. Under "Column II Mother" is entered a zero. The trial court adopted the magistrate's decision on this matter, ordering appellee to pay a monthly child support obligation of $4,000. Appellee argues that this order is not in conformity with R.C.3119.23 and R.C. 3119.24.
 {¶ 75} In material part, R.C. 3119.24 provides that with shared parenting a court shall calculate child support using the worksheet in R.C. 3119.022, but if the court finds that amount unjust or inappropriate for either the child or a parent or would not be in the child's best interests because of extraordinary circumstances or any of the factors stated in R.C.3119.23,[1] the court may deviate from the schedule. R.C.3119.24(B) enumerates its own criteria for deviations because of a parent's extraordinary circumstances:
 {¶ 76} "(B) For the purposes of this section, "extraordinary circumstances of the parents" includes all of the following:
 {¶ 77} "(1) The amount of time the children spend with each parent;
 {¶ 78} "(2) The ability of each parent to maintain adequate housing for the children;
 {¶ 79} "(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;
 {¶ 80} "(4) Any other circumstances the court considers relevant."
 {¶ 81} The burden of proving that the basic support schedule is improper rests on the party who seeks deviation. That party must come forth with evidence that the calculated award is unjust, inappropriate or not in the best interest of the children. Murray v. Murray (1999), 128 Ohio App.3d 662, 671.
 {¶ 82} Appellee argues that none of the R.C. 3119.23 or R.C.3119.24 factors are in evidence here, therefore, the court deviation is improper.
 {¶ 83} We are not certain what the trial court is attempting to do or, if indeed, it is a deviation from the guidelines. The court adopted the magistrate's finding that the children's best interest would be served by receiving the standard of living they would have enjoyed had their parents remained together. This is a factor by which a deviation may be granted pursuant to R.C. 3113.23 (L). The court then goes on to say that to remedy this condition it must deviate from the worksheet because the parties income, "* * * far exceed the $150,000 which is the maximum joint figure in the guidelines."
 {¶ 84} This last statement suggests that the guideline calculus is correct, but we have simply run off the scale. If this were the case, then the court could extend the support schedule by multiplying total income by the marginal percentage derived by dividing the support level on the last line of the schedule by $150,000. [e.g. here, 21,971/$150,000 = 14.65%] and applying the resulting factor to total income. See, Bryant v.Bryant (Jan. 28, 1999), 5th Dist. No. 97CA8; Murray v. Murray
(1999), supra, (10.145% for a single child.) Here, 14.65% of $758, 258 equals $111, 084.80. Appellee's annual obligation, based on his 58.1% of total earnings would be $64, 539.80. Appellant's 41.9% would be $46, 544.53. Deducting the lesser obligation from the greater, see R.C. 3113.215(C), results in an annual obligation from appellee to appellant of $17, 995, or approximately $1, 500 per month.
 {¶ 85} In our view, this calculation would not be a deviation from the support schedule, merely an extension of it. The issue then becomes whether there is evidence of record which would support a deviation 2.5 times above the schedule.
 {¶ 86} The amount calculated utilizing the statutorily prescribed worksheets and schedules are presumed to be the correct amount of child support due. R.C. 3115.215 (B)(1), (G);Mallin v. Mallin (1995) 102 Ohio App.3d 717, 722. We take this to mean that, at least presumably, the statutory calculations result in a support award which is in the children's best interests and reflects a standard of living comparable to that they would have enjoyed had their parent's marriage remained intact. See, Bowen v. Thomas (1995), 102 Ohio App.3d 196, 201.
 {¶ 87} This is where we become perplexed by the trial court's order. We cannot ascertain if the court mistakenly intended its findings that a deviation is necessary to maintain the children's standard of living as predicate to exceeding the $150, 000 income ceiling on the schedule and omitted calculations of appellant's offsetting obligations, or if it actually intended to direct appellee to be solely responsible for both parents' support obligation. If the latter is true, we find nothing in the record which would support such a dramatic deviation. If the former is true, on remand the court must recompute its calculations. In either event, appellee's third assignment is well-taken.
 VII Property Division {¶ 88} In his fourth assignment of error, appellee complains that, without cause, the trial court improperly deviated from an equal division of marital property when it made a $67, 065.99 distributive award to appellant.
 {¶ 89} In both the magistrate's decision and the trial court's judgment entry, appellee was given an "equalization of property" award of $67, 065.99. The court then awarded the same amount to appellant, "* * * as a result of the benefit [appellee] received by payments made from the corporations that he previously controlled."
 {¶ 90} As appellee points out, R.C. 3105.171 (C) (1) provides that:
 {¶ 91} "Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. * * *"
 {¶ 92} R.C. 3105.171(E) states that:
 {¶ 93} "(E) (1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. * * *
 {¶ 94} "(2) The court may make a distributive award in lieu of a division of marital property in order to achieve equity between the spouses, if the court determines that a division of the marital property in kind or in money would be impractical or burdensome.
 {¶ 95} "(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."
 {¶ 96} Appellee insists that the only one of the R.C.3105.171 (E) exceptions to equal division of marital property which could possibly apply here is section (E) (3). According to appellee, however, the magistrate decision which was adopted by the trial court and the trial court's own judgment are inconsistent on the issue of financial misconduct.
 {¶ 97} The magistrate found that:
 {¶ 98} "[Appellee's] expenditures from the corporate entities regarding the Cincinnati Bengals box, the purchase and upkeep of [certain real] property, and excessive personal entertainment and travel expenses for himself and friends, and increased legal costs during the pendency of the divorce, would most likely effect [sic] the valuation of the companies, but was also evidence of financial misconduct. * * *."
 {¶ 99} In its judgment entry, the trial court stated:
 {¶ 100} "This court agrees with the magistrate that the dispute over the Cincinnati Bengal's box was over-stated and that the purchase of said box was a benefit of the employees of Fricker's and a legitimate business expense as established by the professional financial personnel's testimony. This is also true of the dispute concerning the [real] properties with such expenditures being legitimate business purposes as indicated by the CFO, providing a tax break to the Plaintiff as well as the Defendant through their joint tax filings."
 {¶ 101} Appellee maintains that these findings are at odds and that, even though the trial court indicated adoption of this portion of the magistrate's decision, its finding overruled the magistrate's, undermining the only possible support for a $67, 065.99 offset award to appellant.
 {¶ 102} Appellee overstates this incompatibility of these findings. There was ample evidence in the record that appellee repeatedly and extensively used Fricker's funds to support his personal lifestyle. This included the luxury NFL football box, travel expenses, vacation expenses and entertainment expenses for himself and his friends. As the majority shareholder in the Fricker's Corporation, appellee could have easily approved these expenditures and, as the Fricker's chief financial officer testified, since there was a business connection, these were arguably legitimate business expenses; e.g, tax deductible. A majority shareholder, however, has a fiduciary responsibility not to misuse his or her position to the determent of a minority shareholder. Crosby v. Beam (1989), 47 Ohio St.3d 105, 109. While appellee's excessive expenditures may well have been deductible business expenses, the magistrate could well have concluded that these expenses had a negative effect on the value of the business and were, thus, to appellant's detriment. This is financial misconduct sufficient to support the trial court's distribution award. Accordingly, appellee's fourth assignment of error is not well-taken.
 VIII Debt Allocation {¶ 103} In his fifth assignment of error, appellee asserts that the trial court failed to allocate "debt" properly.
 {¶ 104} What appellee is actually talking about is his contribution during the pendency of the divorce to expenses for the former martial home on Duxbury Lane in Perrysburg, Ohio, and a Findlay, Ohio home the couple had purchased as a charity project. Appellee maintains that, during the pendency of the divorce, appellant failed to pay her share of the mortgages, taxes, and upkeep on these properties.
 {¶ 105} The magistrate's decision, which was adopted by the court, on this issue states that, "[a]ny mortgages, insurance, taxes, etc. on any properties awaiting sale shall be borne equally by the parties." Appellee acknowledged the magistrate's order regarding costs pending sale in its objection to the magistrates decision. Appellee suggested the clause was ambiguous and should be clarified as to when this obligation should commence. The trial court did not mention this issue in its final judgment.
 {¶ 106} We fail to see a justiciable issue here. The magistrate's order is clear and appellee has offered no concrete instance where any possible ambiguity has engendered dispute. If such a dispute does arise, it should be raised in post decree proceedings in the trial court. Accordingly, appellee's fifth assignment of error is not well-taken.
 IX NFL Luxury Box {¶ 107} Appellee, in his sixth assignment of error, complains that the trial court erred in declaring a luxury box for the Cincinnati Bengal's football games to be marital property and awarding him $74, 000 for the value of the box. According to appellant, the box was the property of Fricker's and there was no evidence that it was worth $74, 000.
 {¶ 108} Testimony and evidence admitted through the Cincinnati Bengal's director of sales indicated that Fricker's, U.S.A., Inc. and Aset Corporation spilt suite 2045 at Paul Brown Stadium. The annual total lease cost was $74, 000. The lease term was for six years. The two corporations were to split the annual costs equally. Thus, when the court awarded appellee "the Cincinnati Bengal's box with a value to date of $74, 000," it would have represented the two year cost of the box during the pendency of the divorce. Moreover, there was evidence submitted that appellee used the box to entertain his friends, treating it as his personal property. The court, therefore, could have concluded that the box cost was a tangible instance in which appellee used corporate funds for his personal entertainment to the determent of appellant's minority interests. This is a reasonable conclusion based on the evidence. Consequently, we conclude that the trial court was within its discretion when it awarded appellee the value of this property. Accordingly, appellee's sixth assignment of error is not well-taken.
 X. Commercial Property Mortgages {¶ 109} In his seventh assignment of error, appellee asks that we amend the trial court's judgment entry to properly reflect the parties' stipulation with respect to the sale and division of the proceeds of certain commercial real estate that the parties own. Appellee insists that the court's order fails to take into account mortgages against the properties.
 {¶ 110} We find no error in the trial court's order. If appellee believes that the parties can dispose of these properties without the consent or satisfaction of a secured party, we suppose they are welcome to try. Mortgage generally follows debt. Boyer, Survey of the Law of Property, (1981), 500. It appears that the properties at issue are pledged to the lender who refinanced the business. That lender has, presumably, protected its interest. Consequently, there was no harm implicated in the trial court failing to expressly mention the lender's interest. Accordingly, appellee's seventh assignment of error is not well-taken.
 Progressive Concepts, Inc. {¶ 111} In his remaining assignment of error, appellee insists that he should have been awarded sole ownership of the corporation created to retain the Fricker's intellectual property rights, Fricker's Progressive, Inc. Appellee insists such rights are his separate property.
 {¶ 112} This is simply the same argument appellee made in his first assignment of error with respect to all the corporations created prior to the second marriage. Our decision on this issue has not changed. Accordingly, appellee's eighth assignment of error is not well-taken.
 {¶ 113} Upon consideration whereof, the judgment of the Wood County Court of Common Pleas is affirmed in part and reversed in part. This matter is remanded to the said court for reconsideration of its child support award. Costs are to be equally divided between appellant and appellee, pursuant to App.R. 24
Judgment affirmed in part and reversed in part.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Knepper, J., Pietrykowski, J., Singer, J., concur.
[1] "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section3119.22 of the Revised Code:
"(A) Special and unusual needs of the children;
"(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
"(C) Other court-ordered payments;
"(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
"(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;
"(F) The financial resources and the earning ability of the child;
"(G) Disparity in income between parties or households;
"(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
"(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
"(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
"(K) The relative financial resources, other assets and resources, and needs of each parent;
"(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
"(M) The physical and emotional condition and needs of the child;
"(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
"(O) The responsibility of each parent for the support of others;
"(P) Any other relevant factor.
"The court may accept an agreement of the parents that assigns a monetary value to any of the factors and criteria listed in this section that are applicable to their situation. "If the court grants a deviation based on division (P) of this section, it shall specifically state in the order the facts that are the basis for the deviation." R.C. 3119.23.