CROSBY, Appellant,

v.

BEAM et al., Appellees.

[Cite as *Crosby v. Beam* (1992), 83 Ohio App.3d 501.]

Court of Appeals of Ohio,
Lucas County.

No. L-91-116.

Decided Nov. 6, 1992.

502

504

David R. Pheils, Jr., for appellant.

John L. Straub and Margaret J. Lockhart, for appellees.

HANDWORK, Judge.

This case is on appeal from the March 11, 1991 judgment of the Lucas County Court of Common Pleas. This judgment was entered following a jury verdict in favor of appellant, Howard F. (Dean) Crosby on his first claim for relief and a verdict in favor of appellees, Sally and Kenneth Beam and Susan and Gary Graves, on appellant's fifth claim for relief. In addition, the trial court entered judgment in favor of appellant following a settlement of a stipulated claim between the parties and directed a verdict in favor of appellees on appellant's second, third, fourth, and seventh [1] claims for relief. On appeal, appellant asserts the following assignments of error:

"I. The trial court erred in granting defendants' summary judgment as to plaintiff's causes of actions for acts that occurred prior to July 30, 1982.

"II. The trial court erred in removing plaintiff's seventh claim for lost income and punitive damages resulting from defendants' breach of fiduciary duty in administering the trust from the jury and determining such issues itself.

"III. The trial court erred in removing plaintiff's sixth claim for relief regarding conspiracy from the jury and determining such issues itself.

"IV. The trial court erred in removing plaintiff's claim for punitive damages and attorney fees from the jury and determining such issues itself."

On December 10, 1986, appellant and the Christian Caring Center, The Church of the Holy Light, filed an amended complaint against appellees.[2] Appellees were shareholders, officers, and directors of the Seascape Building Company, Inc. ("Seascape"), an Ohio closely held corporation from April 30, 1977 through January 29, 1985. Crosby owned 26.214 percent of the shares of Seascape from April 30, 1977 until September 14, 1984. On September 14, 1984, Crosby transferred his shares to the Christian Caring Center, The Church of the Holy Light, which held the shares until Seascape was dissolved on January 29, 1985. When Seascape was dissolved, all of the corporation's assets were transferred to a liquidating trust, the Crosby Properties Liquidating Trust ("Trust"). Each

---

1. Although the judgment of the trial court refers to directing a verdict on the sixth cause of action, it misstates that this is the conspiracy cause of action. Therefore, we presume that the trial court intended to direct a verdict on Crosby's seventh cause of action for conspiracy. Furthermore, Crosby's sixth cause of action appears to have been abandoned by Crosby and replaced by a stipulation between the parties for liability on the part of appellees with regard to a trust distribution.

2. During trial, Crosby acknowledged that he and the church are the same entity and dropped the church as a party to this action.

shareholder of Seascape became a beneficiary of the Trust in proportions equal to their stock ownership.

In the amended complaint, Crosby alleged the following causes of action: (1) that from April 30, 1977 to January 29, 1985, appellees Kenneth Beam and Gary Graves were paid unreasonable and unjustified salaries and that the authorization of such salaries by appellees as shareholders and directors was a breach of their fiduciary duties owed to appellant; (2) that from April 30, 1977 to January 29, 1985, appellees, as shareholders, directors, and officers, wrongfully authorized the payment of $49,581 by Seascape for their personal expenses in breach of their fiduciary duties owed to appellant, and that since January 29, 1985, appellees Gary Graves and Esther M. Reiker,[3] as trustees, wrongfully authorized the payment in excess of $1,000 by the Trust for their personal expenses; (3) that appellees used Seascape property for their personal benefit; (4) that appellees, as shareholders, officers, and directors, wrongfully authorized Seascape to pay $39,768.30 in life insurance premiums on policies owned by appellees between April 30, 1977 and January 29, 1985, in breach of their fiduciary duties owed to appellant; (5) that appellees, as shareholders, officers and directors, wrongfully authorized no-interest or low-interest loans from Seascape to themselves, resulting in lost interest income to Seascape of $115,682.36; (6) that Reiker, as trustee, paid Crosby less than his proportionate share of distributions due from the Trust since January 29, 1985, and improperly paid herself a $1,000 bonus and paid auto insurance of $452.41 and $1,358.37 for appellees in breach of her fiduciary duty owed to Crosby; and (7) that all of the above actions of appellees and Reiker were carried out pursuant to a conspiracy between them to use their control of the Trust and corporation to benefit themselves to the detriment of Crosby.

On May 13, 1987, the trial court granted appellees' motion to dismiss Counts 1 through 5 and Count 7 of appellant's amended complaint on the ground that these claims could only be brought as a shareholder's derivative action. The court further held that Crosby lacked standing to bring such an action because he had sold his shares and that the church could not assert claims arising before its acquisition of its shares. The reversal of this judgment by the court of appeals on July 8, 1988, was affirmed by the Ohio Supreme Court on December 20, 1989. 47 Ohio St.3d 105, 548 N.E.2d 217. This case was remanded to the trial court for further proceedings.

On November 13, 1990, appellees moved for summary judgment on Counts 1 through 5 and Count 7 of Crosby's amended complaint. Appellees asserted that these claims, which arise out of actions which occurred prior to July 30, 1982,

---

3. It appears that the claims against Reiker for breach of fiduciary duty were abandoned by Crosby.

were barred by the applicable four-year statute of limitations (R.C. 2305.09). Appellees argued that the discovery rule was not applicable because Crosby knew of the alleged wrongful acts prior to 1982. Appellees also argued that Crosby was not entitled to punitive damages because he could not prove that the alleged wrongful acts were done with malice.

In response, Crosby argued that the claims in Counts 1 through 5 arose out of a contractual relationship between the parties and, therefore, that the fifteen-year statute of limitations under R.C. 2305.06 applied. The alleged contract between the parties was Seascape's articles of incorporation and code of regulations, which empowered appellees as officers and directors to control the corporation and indemnify themselves for liability arising out of the performance of their duties as officers and directors except for willful misconduct. Appellant argued that his claims involved the breach of appellees' fiduciary duties imposed by these written instruments. Alternatively, Crosby argued that a six-year statute of limitations under R.C. 2305.07 applies because the business relationship between the parties created a quasi-contractual relationship. In the alternative, Crosby argued that the running of the four-year statute of limitations was tolled by the discovery rule (R.C. 2305.09).

Crosby acknowledged that the four-year statute of limitations under R.C. 2305.09 applied to Count 7 of his complaint, but argued that the running of the statute as to this count was also tolled by the discovery rule.

In connection with the discovery rule issue, Crosby attested that while he questioned or complained of some of appellees' actions prior to 1982, he was satisfied with explanations given by appellees. He further attested that it was not until 1985, when he received a copy of Seascape's 1983 tax return and information from Susan Graves, that he became aware of the alleged improper actions of appellees. Crosby attested that he then had the corporate records examined by a certified public accountant and learned for the first time in 1986 about all of the alleged improper actions of appellees. At a minimum, Crosby argued that a question of fact existed as to when Crosby had or should have had knowledge of the alleged wrongful acts of appellees.

Alternatively, Crosby argued that the applicable statute of limitations was tolled under R.C. 2305.15 by the fact that appellees were out of the state of Ohio at the time he filed his complaint.

Crosby also argued that he was entitled to punitive damages because there was direct or inferential evidence of fraud presented, there was evidence that appellees' conduct was intentional and involved a conscious disregard for Crosby's rights, there was evidence of a breach of fiduciary duty, and there was evidence of a breach of contractual duty.

On January 24, 1991, the court granted appellees' motion for summary judgment in part, finding that the four-year statute of limitations applied, that the discovery rule was not applicable to the cases involving allegations of unauthorized or negligent actions by corporate officers and directors, and that R.C. 2305.15 was not applicable because the corporation and statutory agent were subject to service in Ohio and the "parties and causes of action occurred while they were in the state * * *." Therefore, the court prohibited the assertion of causes of action arising before July 30, 1982. In addition, the court denied Crosby's request for punitive damages. The remainder of the issues proceeded to trial by jury.

## I

In his first assignment of error, Crosby argues that the trial court erred by granting appellees' partial summary judgment motion and dismissing Crosby's claims against appellees regarding their conduct prior to July 30, 1982.

## A

■ Appellant first contends that the trial court applied an improper statute of limitations (R.C. 2305.09) to his claims. The trial court relied on the case of *Squire v. Guardian Trust Co.* (1947), 79 Ohio App. 371, 35 O.O. 144, 72 N.E.2d 137, to impose a four-year statute of limitations on all of appellant's claims. Appellant argues that the *Squire* case does not apply because it involved a negligence claim and not a fraud or intentional conduct claim. In addition, appellant argues that the *Squire* case is distinguishable because the depositors/victims in that case could only sue collectively for the benefit of the bank; while in the case before us, appellant has an individual claim against the corporation. Appellant argues that his case is analogous to *Saad v. Rodriguez* (1986), 30 Ohio App.3d 156, 30 OBR 275, 506 N.E.2d 1230, *Mills v. Liberty Moving & Storage, Inc.* (1985), 29 Ohio App.3d 90, 29 OBR 101, 503 N.E.2d 199, and *Claxton v. Mains* (1986), 33 Ohio App.3d 49, 514 N.E.2d 427, which imposed the fifteen-year statute of limitations under R.C. 2305.06, or the cases of *Thompson v. Kerr* (D.C.S.D.1982), 555 F.Supp. 1090, and *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 12 OBR 246, 465 N.E.2d 1298, which imposed the six-year statute of limitations under R.C. 2305.07. Appellant argues that the controlling shareholders and officers had fiduciary duties imposed by the articles of incorporation and code of regulations. Therefore, Crosby argues that a contractual relationship existed between the parties. Because Crosby believes that his claims involve a breach of contractually based duties, he argues that R.C. 2305.09, regarding tort claims, is inapplicable, and that R.C. 2305.06, regarding contract claims, is applicable.

■ We find that Crosby did not assert in his complaint a cause of action for breach of contract. This conclusion is based not only upon the facts alleged in the complaint, but the fact that appellant himself did not intend to assert a breach of contract claim since he did not attach copies of the articles of incorporation or code of regulations to the complaint as required by Civ.R. 10(D) and did not allege that the fiduciary duty arose out of a unwritten contract. Furthermore, the Ohio Supreme Court did not consider Crosby's claims to be based on a contractual relationship. The court held in *Crosby v. Beam* (1989), 47 Ohio St.3d 105, 108–110, 548 N.E.2d 217, 220–222, that Crosby's cause of action for breach of fiduciary duty could be maintained as a direct action against the majority shareholders. In coming to this conclusion, the court recognized that under common law majority shareholders owe a heightened fiduciary duty to minority shareholders in closely held corporations. The breach of this type of fiduciary duty constitutes a tort, which is subject to the four-year statute of limitations under R.C. 2305.09. *State ex rel. Lien v. House* (1944), 144 Ohio St. 238, 29 O.O. 399, 58 N.E.2d 675, paragraph two of the syllabus; *Hart v. Guardian Trust Co.* (1945), 52 Ohio Law Abs. 225, 250–251, 75 N.E.2d 570, 588; *Benza v. United States Fire Ins. Co.* (Dec. 7, 1988), Hamilton App. No. C–870849, unreported, 1988 WL 130707; and *Thropp v. Bache Halsey Stuart Shields, Inc.* (C.A.6, 1981), 650 F.2d 817, 822.

Accordingly, Crosby's first argument is found to be without merit.

## B

■ Appellant contends secondly that the discovery rule is applicable to Count 7 of his complaint whether it is interpreted as alleging a fraudulent conspiracy by appellees to breach their trust or as a claim for conversion. Appellant argues that the trial court mischaracterized his claim as an action against "corporate officers and directors" which alleges "unauthorized and negligent acts."

Civ.R. 9(B) provides that fraud must be pled with particularity. The complaint must allege:

"(1) A false representation; (2) knowledge by the person making the representation that it is false; (3) the intent by the person making the representation to induce the other to rely on that representation; (4) rightful reliance by the other to his detriment; [and] (5) an injury as the result of the reliance." *Korodi v. Minot* (1987), 40 Ohio App.3d 1, 3, 531 N.E.2d 318, 320. See, also, *F & J Roofing Co. v. McGinley & Sons, Inc.* (1987), 35 Ohio App.3d 16, 518 N.E.2d 1218.

We find that Crosby's amended complaint did not properly allege a conspiracy to commit fraud.

■ The tort of "conversion" is defined as the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Zacchini v. Scripps–Howard Broadcasting Co.* (1976), 47 Ohio St.2d 224, 226, 1 O.O.3d 129, 130, 351 N.E.2d 454, 456.

■ In the case before us, even if we read Crosby's amended complaint as alleging a cause of action for conversion, the property alleged to have been subject to conversion in Counts 1 through 5 and 7 belong to the corporation and not appellant. Therefore, appellant could not bring an individual action against appellees to recover these funds. In addition, it appears from the record that Crosby abandoned Count 6 of his amended complaint. In any event, the claims made in Count 6 regarding improper Trust distributions, are also derivative claims which appellant did not properly assert as such. Furthermore, the claim that he did not receive his proportionate share of Trust assets is not stated as a claim for conversion.

■ We agree with the trial court that Crosby's amended complaint asserts only a cause of action for wrongful authorizations or negligent acts. Therefore, the discovery rule is not applicable to this case. R.C. 2305.09 provides for application of the discovery rule to causes of action for trespass underground, injury to mines, conversion, or fraud. This statute does not provide for application of the discovery rule to other torts. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 181, 546 N.E.2d 206, 210.

Appellant's second argument is found to be without merit.

## C

■ Crosby contends thirdly that the statute of limitations was tolled while appellees were absent from Ohio. The trial court held that R.C. 2305.15 (the savings clause) was inapplicable because the corporation and statutory agent were subject to service of process in Ohio and the causes of action occurred in Ohio when the parties were in Ohio. Crosby's argument that the savings clause does apply is based upon his view that he has individual claims against appellees and not against the corporation. Appellant contends that the only bar to the application of the savings clause would be the Commerce Clause, but that appellees were not engaged in interstate commerce. We agree.

R.C. 2305.15(A) (effective July 9, 1986) reads as follows:

"(A) When a cause of action accrues against a person, if he is out of the state, has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.98, and 1304.29 of the Revised Code does not begin to run until he comes into the state or while

he is so absconded or concealed. After the cause of action accrues if he departs from the state, absconds, or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought."

In *Bendix Autolite Corp. v. Midwesco Ent., Inc.* (1988), 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896, the United States Supreme Court held that R.C. 2305.15, under the facts of that case, is unconstitutional because the suspension of a statute of limitations when a corporation or person is out of the state violates the Commerce Clause of the United States Constitution. In that case, Midwesco (an Illinois corporation with its principal place of business in Illinois) contracted with Bendix (a Delaware corporation with its principal place of business in Ohio) to deliver and install a boiler system at a Bendix factory in Ohio in 1974. Bendix was dissatisfied with the boiler system and sued Midwesco for breach of contract in a federal court located in Ohio in 1980. Midwesco asserted that the claim was barred by the statute of limitations (R.C. 2305.09). Bendix asserted that the statute of limitations period had not lapsed because it was tolled under R.C. 2305.15 because Midwesco was outside the state and did not have a designated agent for service of process. Midwesco argued that R.C. 2305.15 violated the Commerce Clause and Due Process Clause of the Fourteenth Amendment. The Supreme Court held that the statute violated the Commerce Clause because the burden on interstate commerce exceeded the advancement of the local interests of the state to regulate. *Id.* at 891, 108 S.Ct. at 2220, 100 L.Ed.2d at 896. The court viewed the statute as imposing a significant burden upon a foreign corporation by requiring the corporation to elect between appointing a resident agent for service of process (thereby submitting the corporation to the general jurisdiction of Ohio courts even in cases where the transaction had minimal connection to Ohio) or permanently losing its statute of limitations defense. *Id.* at 892–893, 108 S.Ct. at 2221–2222, 100 L.Ed.2d at 896. The court recognized the difficulty of accomplishing service of process on foreign corporations and, therefore, the need to curtail limitation protection for such corporations. However, since Midwesco was subject to service of process under Ohio's long-arm statute, it was being treated differently from Ohio companies solely on the basis that Midwesco would not subject itself to the general jurisdiction of Ohio courts. This different treatment was viewed by the court as an unreasonable burden on interstate commerce. *Id.* at 894, 108 S.Ct. at 2222, 100 L.Ed.2d at 896.

Both the Ninth Circuit Court of Appeals and the United States District Court for the Northern District of Ohio, Eastern Division, have addressed similar cases since the *Bendix* case was decided.

In *Abramson v. Brownstein* (C.A.9, 1990), 897 F.2d 389, the court held that California's tolling statute, which is similar to Ohio's, violated the Commerce

Clause. In the *Abramson* case, World Coin Partners and its general partner, Abramson (a California resident) orally contracted over the telephone in 1981 to buy gold coins and currency from Brownstein (a Massachusetts resident). The court of appeals found that Brownstein was engaged in interstate commerce because he entered into a sales transaction with a California resident and partnership. *Id.* at 392. The court of appeals reasoned that although the California statute treats residents and nonresidents alike, it imposed an unreasonable burden on interstate commerce.

In *Tesar v. Hallas* (N.D.Ohio 1990), 738 F.Supp. 240, the district court held that R.C. 2305.15 imposed an unreasonable burden on interstate commerce under the facts of that case. In the *Tesar* case, Hallas, an employee of the Cleveland Plain Dealer, wrote an allegedly false and defamatory article about Tesar in February 1987. In September 1987, Hallas left Cleveland for new employment in Pennsylvania. Tesar sued Hallas in May 1989 in Cleveland, and service was made upon Hallas in Pennsylvania. The court held that interstate commerce is affected by the movement of persons between states for employment. The court concluded that like the circumstances in Bendix, the savings clause is an impermissible burden on interstate commerce since Hallas could not leave Ohio without waiving his statute of limitations defense even though he was subject to service of process under Ohio's long-arm statute. *Id.* at 243.

Upon a review of the facts before us, we conclude that this case is distinguishable from the above cases because it does not involve interstate commerce. Accordingly, Ohio's savings clause is applicable and it bars appellees' defense that the statute of limitations has run.

We find that Crosby's third argument has merit.

Wherefore, appellant's first assignment of error is found well taken.

## II

In his second assignment of error, Crosby argues that the trial court erred in removing from the jury the issue of whether appellant suffered a loss of income or was entitled to punitive damages as a result of the breach of appellees' fiduciary duties in administering the Trust.

Crosby's second assignment of error is difficult to address based upon the poor record before us. In its judgment, the trial court entered judgment in favor of Crosby in the amount of $53,807.61 based upon appellees' stipulation to liability in this amount. The court stated that this stipulation and judgment related to appellant's seventh claim for relief. However, appellant's seventh claim for relief related to the conspiracy cause of action. The court dismissed appellant's sixth claim for relief, indicating that it related to the conspiracy claim, when in fact the

sixth claim related to the claims against Reiker and Gary Graves as trustees of the Trust. The parties themselves continue the confusion. We assume that the trial court intended to dismiss Crosby's seventh claim for relief (the conspiracy cause of action). We also assume that Crosby's second assignment of error relates to a stipulated cause of action and that his sixth cause of action regarding the Trust has been abandoned.

At trial, appellees stipulated that Crosby was entitled to a distribution from the Trust in the amount of $53,807.61. The trial court informed Crosby that if he accepted this stipulation, he could not admit any evidence relating to the disposition of Trust funds. Appellant accepted the stipulation. The only issue still in dispute was whether Crosby could submit to the jury the issue of whether he should also recover, as compensatory damages, for the loss of the use of his money beginning from the date it was originally required to be distributed until the date it actually was distributed. Appellees argued that the allowance of prejudgment interest was controlled by R.C. 1343.03 and must be decided by the trial court.

Even this stipulation is confusing based upon the record before us. Reiker was originally the trustee of the Trust, until her death. Appellee Gary Graves became the successor trustee in 1986. Gary Graves testified that any error in the distributions from the Trust was an honest mistake. However, he did not testify as to when the distribution "mistake" was made. Since appellees stipulated to liability for this "mistake," we presume it occurred while Gary Graves was trustee. The record is also not clear as to whether appellees were stipulating that Gary Graves negligently breached his fiduciary duty regarding the Trust distributions. The judgment provides that all four defendants were personally liable. This indicates that they were stipulating to a conspiracy with Gary Graves to have him breach his fiduciary duty. The record could have been made more clear if the pleadings had been conformed to the evidence.

R.C. 1343.03 provides, in its entirety, as follows:

"(A) In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract.

"(B) Except as provided in divisions (C) and (D) of this section, interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct, including but not limited to a civil action based on tortious conduct that has been settled by agreement of the parties, shall be computed from the date the judgment, decree, or order is rendered to the date on which the money is paid.

"(C) Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.

"(D) Divisions (B) and (C) of this section do not apply to a judgment, decree, or order rendered in a civil action based on tortious conduct if a different period for computing interest on it is specified by law, or if it is rendered in an action against the state in the court of claims, or in an action under Chapter 4123. of the Revised Code."

R.C. 1343.03(A) sets the statutory percentage rate applicable when an interest rate is not set by contract. Subsection (B) provides for a statutory right to recover postjudgment interest on money judgments rendered in a civil action based on tortious conduct. Subsection (C) provides for a statutory right to prejudgment interest in civil actions based on tortious conduct, which the court has determined were not settled by the parties because the losing party failed to make a good faith effort to settle the case and the winning party did do so. Subsection (D) sets forth three specific limitations on the application of subsections (B) and (C) (none of which is applicable in this case).

If we interpret the "stipulation" in this case as a settlement between the parties, R.C. 1343.03(B) applies and does not govern the issue of whether appellant was entitled to "prejudgment" interest as compensatory damages. If we do not interpret the "stipulation" as a settlement, R.C. 1343.03(C) seems applicable. However, the trial court did not hold a hearing subsequent to the verdict or make a determination that appellees failed to exercise good faith to settle the claim and appellant did do so. The trial court does not appear to have been awarding prejudgment interest because of appellees' failure to settle this claim before trial.

We find in this case that the parties only partially settled the stipulated claim when appellees stipulated that appellant was due a distribution from the Trust. The issue of whether appellant was also entitled to recover for the loss of the use

of this money (interest on the money) was not settled. Therefore, R.C. 1343.03 is not applicable to this case.

We cannot decide whether Crosby could recover for the loss of the use of this money, however, because we have no indication as to what exactly it was that appellees stipulated. While interest is sometimes recognized as compensable damages (see, generally, 91 Ohio Jurisprudence 3d [1989] 547, Trusts, Section 502), the record does not reveal what type of cause of action was involved in the stipulation. Thus, we cannot determine if the trial court had the discretion to remove this issue from the jury and set the interest rate itself or even whether Crosby was prejudiced thereby. Therefore, we must presume that the trial court's decision is correct. *Knapp v. Edwards Laboratories* (1980), 61 Ohio St.2d 197, 199, 15 O.O.3d 218, 219, 400 N.E.2d 384, 386.

Inasmuch as Crosby agreed not to present any evidence regarding the disposition of the Trust funds, he has waived any right to assert that Gary Graves intentionally or by conscious disregard of Crosby's rights made an incorrect distribution to appellant. Therefore, Crosby is not entitled to an award for punitive damages with respect to this claim.

Accordingly, Crosby's second assignment of error is found not well taken.

### III

In his third assignment of error, Crosby argues that the trial court erred by removing from the jury the issue of conspiracy and granting a directed verdict to appellees on this claim.

The trial court granted appellees a directed verdict on the conspiracy claim stating that there was no factual or legal basis to support it. Crosby argues that the proof of the conspiracy claim was that appellees admitted to liability with regard to the Trust distribution and the jury found that appellees had taken approximately $82,000 in excessive salaries. Furthermore, Crosby points to the statement of appellees' attorney that "perhaps he [appellant] has established a conspiracy to manage the business." Appellant also contends that appellees admitted that they acted jointly with each other's consent and advice.

The civil action of "conspiracy" is defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 126, 512 N.E.2d 640, 645. An underlying tort is necessary to give rise to a cause of action for conspiracy. Therefore, there must be actual damages attributable to the conspiracy in addition to those damages caused by the underlying tort in order for the plaintiff

to recover for the conspiracy. *Minarik v. Magy* (1963), 8 Ohio App.2d 194, 195–196, 26 O.O.2d 359, 360, 193 N.E.2d 280, 280–282.

In the case before us, all of the causes of action alleged in Crosby's complaint were dismissed with the exception of the causes of action for breach of fiduciary duties regarding the unreasonable director salaries and authorization of loans to appellees.[4] With regard to the causes of action for breach of appellees' fiduciary duties, Crosby alleged that each of the appellees breached his or her fiduciary duty. Therefore, he alleged no actual damages separate from the tortious breach of fiduciary duty. Since there were no actual damages alleged with respect to the cause of action for conspiracy to commit a breach of fiduciary duty, the trial court properly directed the verdict in favor of appellees on the conspiracy claim.

Therefore, Crosby's third assignment of error is found not well taken.

## IV

In his fourth assignment of error, Crosby argues that the trial court erred in removing from the jury his claims for punitive damages and attorney fees and in granting appellees a directed verdict on such issues.

The trial court granted appellees a directed verdict on the issues of punitive damages and attorney fees because it found no factual basis for concluding that appellees acted with "hatred, ill will or a spirit of revenge or by a conscious disregard for the rights and safety of [appellant] that had a great probability of causing substantial harm." Crosby argues that this conclusion of the trial court was wrong because there was evidence of fraud or an inference of fraud and evidence of an intentional and conscious disregard for Crosby's rights. Therefore, Crosby argues that he is entitled to punitive damages under the holdings in *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, *Roberts v. Mason* (1859), 10 Ohio St. 277, and *Detling v. Chockley* (1982), 70 Ohio St.2d 134, 24 O.O.3d 239, 436 N.E.2d 208.

Since Crosby's claims arising prior to 1982 were erroneously dismissed by the trial court, additional evidence of actual malice relating to the wrongful acts of appellees during the 1982–1985 period may have been erroneously excluded. In the interest of justice, we find that the issue of whether appellant could prove punitive damages and attorney fees should be redetermined by the trial court after this case is retried and all of the evidence is considered.

Accordingly, we find Crosby's fourth assignment of error well taken.

---

4. We note that with respect to the stipulated cause of action regarding the Trust, Crosby never alleged a conspiracy claim.

Having found that the trial court did commit error prejudicial to appellant, the judgment of the Lucas County Court of Common Pleas is reversed in part and affirmed in part as indicated herein. This case is remanded to the trial court for further proceedings in accordance with this opinion. Pursuant to App.R. 24, appellant and appellees are ordered to equally divide the court costs incurred on appeal.

*Judgment accordingly.*

GLASSER, P.J., and SHERCK, J., concur.