[Cite as *Hanko v. Nestor*, 2019-Ohio-2256.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Michael Hanko

    Appellee

v.

Michael Nestor, et al.

    Appellant

v.

Robert Hanko

    Appellee

Court of Appeals No. E-18-007

Trial Court No. 2001 CV 0304

**<u>DECISION AND JUDGMENT</u>**

Decided: June 7, 2019

* * * * *

Brent L. English, for appellees.

Steven B. Beranek, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** This is an appeal from the January 19, 2018 judgment of the Erie County Court of Common Pleas denying appellant's motion for a new trial. Finding no error, we affirm the judgment.

## Assignments of Error

{¶ 2} Appellant sets forth two assignments of error:

1. THE TRIAL COURT ERRED WHEN IT GRANTED APPELLEE'S ORAL MOTION FOR DIRECTED VERDICT AT THE CLOSE OF APPELLANT'S CASE.

2. THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR NEW TRIAL.

## Background

{¶ 3} The facts of this case are fully set forth in our decisions in *Hanko v. Nestor*, 6th Dist. Erie No. E-11-055, 2012-Ohio-4488 ("*Hanko* I"), and *Hanko v. Nestor*, 6th Dist. Erie No. E-15-041, 2016-Ohio-2976 ("*Hanko* II").

{¶ 4} In May of 1994, appellant, Michael Nestor, and appellee, Michael Hanko, formed H&N Construction, Inc. ("H&N"). Before establishing H&N, appellee and appellant worked together for another construction company.

{¶ 5} H&N had two executive directors, appellant and appellee, and both owned 50 percent of the company. Appellant was president, appellee was vice-president, and appellant's wife, Betsy Nestor, was secretary. The company also employed labor workers, and it used equipment that appellant and appellee either brought to H&N or purchased to contribute to H&N's production.

{¶ 6} Until around mid-1999, appellant and appellee received equal paychecks and profits, and the business was going well. Then appellant and appellee's relationship

2.

began to deteriorate, and appellee communicated that he wanted to sell his interest in the company. He demanded around $200,000 for his share. Appellant was only willing to pay him half of that price. There was no shareholder or operating agreement in place and an impasse ensued.

{¶ 7} Appellant continued to operate the business while appellee was treated as if he retired and abandoned his interests. Appellee filed a complaint against appellant in November 1999, alleging that appellant had, among other things, breached fiduciary duties to appellee and usurped corporate opportunities. Appellant filed counterclaims against appellee alleging similar causes of action. The case was voluntarily dismissed without prejudice in April 2001.

{¶ 8} Appellee re-filed the action in June 2001. Appellant again filed counterclaims against appellee. The cases were identical other than the addition of appellee's brother, Robert Hanko, and Hanko Farms, Inc. as parties to a third-party complaint filed by appellant and his wife.

{¶ 9} In 2009, appellant filed two separate motions to dismiss appellee's claims for failure to prosecute. On July 2, 2009, the trial court dismissed appellee's complaint with prejudice for failure to prosecute pursuant to Civ.R. 41(B)(1).

{¶ 10} On September 28, 2012, we affirmed the trial court's July 2, 2009 judgment dismissing appellee's claims. *See Hanko I*. Appellee then filed an application for reconsideration, which we denied. The Supreme Court of Ohio did not accept the

3.

case for review. *See Hanko v. Nestor*, 134 Ohio St.3d 1469, 2013-Ohio-553, 983 N.E.2d 368.

{¶ 11} On May 12, 2015, appellee filed a motion for relief from the trial court's June 17, 2011 judgment denying appellee's motion for reconsideration of the July 2, 2009 order. In the motion, appellee claimed he was entitled to relief pursuant to Civ.R. 60(A) or Civ.R. 60(B)(5). The trial court held an evidentiary hearing and, on July 24, 2015, the trial court granted appellee's motion. Appellant timely appealed to this court.

{¶ 12} On May 13, 2016, we reversed the trial court's July 24, 2015 judgment. *See Hanko II*. We determined the trial court improperly proceeded under Civ.R. 60. Our judgment affirmed that appellee could not bring forth his claims as held in the July 2, 2009 trial court order. This court found, however, that appellant's 2001 counterclaims were preserved and the case was remanded to the trial court.

{¶ 13} The matter proceeded to trial on appellant's breach of fiduciary duty claim on September 25, 2017. At the close of appellant's evidence, appellee moved for a directed verdict. The trial court granted the motion. The judgment was journalized on October 25, 2017. Appellant then moved the court for a new trial, and the court denied the motion on January 19, 2018. Appellant timely appeals.

## Legal Analysis

{¶ 14} Although not asserted in an assignment of error, the parties initially place in dispute to what extent this court should address appellant's counterclaims considering he brought forth the claims in a direct, as opposed to a derivative action. This issue is

4.

one of law and shall be reviewed de novo. *See Heaton v. Rohl*, 193 Ohio App.3d 770, 2011-Ohio-2090, 954 N.E.2d 165, ¶ 53 (11th Dist.).

{¶ 15} Appellant asserts a derivative action is not necessary because Ohio law allows business partners and shareholders to bring forth direct, as opposed to derivative claims against other partners or shareholders for a breach of fiduciary duty.

{¶ 16} Appellee contends appellant's counterclaims should be denied because appellant must, but did not, proceed with a derivative action.

{¶ 17} Initially, we note H&N was a close corporation because it only had two shareholders and H&N's shares were not traded on a securities market. *See Crosby v. Beam*, 47 Ohio St.3d 105, 548 N.E.2d 217 (1989), paragraph one of syllabus.

{¶ 18} Directors and shareholders of a closely held corporation owe the shareholders fiduciary duties to act in good faith and to refrain from self-dealing. *See id.* at 107-108; *Heaton*, 193 Ohio App.3d 770, 2011-Ohio-2090, 954 N.E.2d 165, at ¶ 47.

{¶ 19} Generally, "actions for breach of fiduciary duties are to be brought in derivative suits." *Grand Council v. Owens*, 86 Ohio App.3d 215, 220, 620 N.E.2d 234 (10th Dist.1993), citing *Cole v. Ford Motor Co.*, 566 F.Supp. 558, 568-569 (W.D.Pa.1983). One nuanced exception is where the case involves "claims by shareholders in a close corporation." *See, e.g.*, *Terry v. Carney*, 6th Dist. Ottawa No. OT-94-054, 1995 Ohio App. LEXIS 5754, *17 (Dec. 29, 1995).

{¶ 20} Appellant argues he was not required to bring forth his counterclaims as a derivative action because his claims involved a close corporation. For support he

specifically points to *Crosby*, where the Supreme Court of Ohio held that "claims of a breach of fiduciary duty alleged by minority shareholders against shareholders who control a majority of shares in a close corporation, and use their control to deprive minority shareholders of the benefits of their investment, may be brought as individual or direct actions and are not subject to the provisions of Civ. R. 23.1." *Crosby* at 109-110.

{¶ 21} In this case, we cannot say the facts fit squarely within the explicit framework of *Crosby* because the parties were both equal owners of H&N, and thus there was no majority or minority shareholder.

{¶ 22} We look to *Crosby*'s progeny, and note that this court has not applied the rule articulated in *Crosby* to a case where there has been no minority shareholder. *See Frick v. Frick*, 6th Dist. Wood No. WD-03-075, 2004-Ohio-6898; *Mulchin v. ZZZ Anesthesia, Inc.*, 6th Dist. Erie No. E-05-045, 2006-Ohio-5773; *Binsack v. Hipp*, 6th Dist. Huron No. H-97-029, 1998 Ohio App. LEXIS 2370 (June 5, 1998); *Terry v. Carney*, 6th Dist. Ottawa No. OT-94-054, 1995 Ohio App. LEXIS 5754 (Dec. 29, 1995); *Crosby v. Beam*, 83 Ohio App.3d 501, 615 N.E.2d 294 (6th Dist.1992); *Hall v. Edmonds*, 6th Dist. Lucas No. L-91-219, 1992 Ohio App. LEXIS 4349 (Aug. 28, 1992).

{¶ 23} We first point to *Citizens Fed. Bank v. Chateau Constr. Co.*, 2d Dist. Montgomery No. 13902, 1994 Ohio App. LEXIS 167 (Jan. 19, 1994), where a direct action was allowed.

{¶ 24} In *Citizens*, the Second District Court of Appeals applied the holding of *Crosby* despite there being no minority shareholder. *Id*. at *4. There were two business

6.

partners, Nelson and Ross, who each owned 50 percent of a company they started in 1987. Evidence demonstrated "that [Nelson] was the controlling shareholder." *Id.* at *5. As a result of Nelson being the controlling shareholder, breach of his fiduciary duty to Ross was actionable. *See id.* at *4, citing *Crosby* at 109 (implying "controlling" shareholder can be treated as a "majority," perhaps despite there being no true "minority" shareholder).

{¶ 25} Distinguishable from *Citizens* is *Kable v. Trinity Fin. Corp.*, S.D.Ohio No. 07-CV-1131, 2008 U.S. Dist. LEXIS 23974 (Mar. 11, 2008), where a direct claim was denied. In *Kable*, the U.S. District Court for the Southern District of Ohio cited *Crosby* and found "the minority-shareholder exception is inapplicable to cases in which there are no minority shareholders." *Id.* at *15-16. Kable and Andolshek were equal partners in their company, and Kable sued Andolshek. *Id.* at *2. Andolshek was vice-president and, in that capacity but for his own personal gain, had wired $125,102.50 of company funds to a third party. Kable alleged this transfer was an illegal conversion, and he brought a derivative claim on behalf of the company for $125,102.50 and, in the alternative, a direct claim for breach of fiduciary duty for $62,551.25 (50 percent of $125,102.50) on behalf of himself. *Id.*

{¶ 26} The *Kable* court dismissed the direct claim. *Id.* at *15-17. In doing so, the court first analyzed the factor of control in favor of disallowing the direct claim and recognized that as an equal partner and president, Kable "would have as much right and opportunity to exercise control over any judgment[.]" *Id.* at *15.

7.

{¶ 27} Additionally, the court recognized that the legal authorities on which Kable relied were distinguishable in that those "Ohio courts permitted direct claims in lieu of derivative actions because the corporation no longer existed." *Id*. at *17. Thus the court analyzed whether the company was an ongoing concern, and found it favored disallowing a direct claim if so.

{¶ 28} Lastly, the court stated "Kable allege[d] no injury separate and distinct from that of [the company,]" *id*., hence there analyzing who bears the injury or harm, and whether the injury or harm directly affected the company and only indirectly affected the shareholder, Kable. *See also Crosby* at 110, citing *Adair v. Wozniak*, 23 Ohio St.3d 174, 492 N.E.2d 426 (1986).

{¶ 29} Consistent with the law of *Crosby*, *Citizens*, and *Kable*, and because we found 50/50 co-owners of a close corporation in this appeal, we consider the following in determining if a direct claim is proper: (1) is the injury or harm separate and distinct from the injury or harm to the company; (2) did defendant have authority and control the company in a way that led to harming other shareholders; and (3) is the company an ongoing concern. *See, e.g.*, *Gensemer v. Hallock*, 125 Ohio App.3d 84, 92, 707 N.E.2d 1156 (9th Dist.1997) (stating "* * * where there is a close corporation with only four shareholders, where the corporation has already been dissolved, and where the issues involved are not terribly complex, we cannot say the lower court errs in allowing a former shareholder to pursue a direct action[.]").

8.

(1) Separate and Distinct Injury or Harm

{¶ 30} To illustrate the "separate and distinct" consideration we look to *Heaton*, 193 Ohio App.3d 770, 2011-Ohio-2090, 954 N.E.2d 165, where the Eleventh District Court of Appeals allowed a direct claim, stating "[a] shareholder * * * may bring a direct action against a director or officer for injuries suffered by the corporation where: (1) the injury arises out of a special duty * * * or (2) the shareholder suffered damages separate and distinct from that suffered by other shareholders." *Id*. at ¶ 55.

{¶ 31} Rohl and Heaton were equal (50/50) shareholders of a close corporation named All Aircraft Services, Inc. ("AAS"). *Id*. at ¶ 57. AAS was an aviation business that serviced aircrafts, and Rohl was the sole owner of the company, T&G, which held the lease "over the hangar in which AAS conducted its operations[.]" *Id*. at ¶ 58.

{¶ 32} The *Heaton* court found that Rohl and Heaton agreed AAS would provide discounted labor to T&G, which was "to offset expenses incurred by AAS, including rent and other overhead." *Id*. at ¶ 8. AAS operated for 39 months and was profitable and self-sustaining financially. After a disagreement about profits, Rohl and Heaton's relationship deteriorated. T&G, through Rohl, requested that AAS pay it $90,000, in mostly back rent, for the period from January 2003, through to September 2005. *Id*. at ¶ 19-20.

{¶ 33} AAS could not pay the back rent and ceased operations. *Id*. Rohl continued operating the same type of business, from the same facility, using the same employees, and assisting the same customers, as AAS. *Id*. Heaton sued Rohl for, among

9.

others, breach of fiduciary duty. The *Heaton* court held that Rohl indeed breached his duties to act in good faith and refrain from self-dealing. *Id*. at ¶ 59.

{¶ 34} The *Heaton* court further held Rohl caused Heaton injury which was separate and distinct from that which the company suffered. *Id*. More specifically, the court recognized that "Rohl's actions deprived Heaton, the sole remaining shareholder, of both his equal share in the company and his employment." *Id*. The court then stated that "Rohl, on the other hand, was able to continue operating a business engaged in the same operations as AAS, in the same location, with the same employees, assisting the same customers[,]" and that Rohl was undamaged by his own actions and profited at Heaton's expense. *Id*.

{¶ 35} Here, appellant asserts the injury or harm he suffered as a result of appellee's acts was separate and distinct from the company because appellee, the wrongful actor, was the only shareholder to otherwise suffer or profit from his wrongful acts. Appellant cites to *Medina v. Perumbeti*, 8th Dist. Cuyahoga No. 66732, 1994 Ohio App. LEXIS 5809 (Dec. 22, 1994), referring to it as "remarkably instructive with regard to * * * whether the injury caused to H&N Construction by Hanko's breach of fiduciary duties in effect constitutes injury to Nestor personally." Appellant otherwise concedes the injury or harm the company suffered was the same harm he suffered.

{¶ 36} Appellee contends that because H&N was a separate legal entity from its shareholders, appellant improperly asserted a direct claim below because appellant's

10.

claims, "even if proved, were for injuries to H&N and clearly not to Nestor personally."

Appellee thus asserts a derivative claim and compliance with Civ.R. 23.1 were necessary.

{¶ 37} We particularly find appellant's allegations, if proven and well-taken by the trier-of-fact, would demonstrate appellee sought to compete, disrupted business operations by terminating employees, used and converted equipment, and usurped and withheld business opportunities, all in an effort to deliberately seek to harm H&N, which was appellant's sole means of income. Appellee was the only other shareholder of H&N, and like Rohl in *Heaton*, was allegedly undamaged by his own actions and actually profited at appellant's expense. *See Heaton* at ¶ 59.

{¶ 38} Accordingly, we find this first consideration weighs in favor of allowing a direct claim by appellant.

(2) Company Control

{¶ 39} We next consider whether appellee controlled H&N, with exclusive authority, in a way that led to harming other shareholders. We again reference *Citizens*, 2d Dist. Montgomery No. 13902, 1994 Ohio App. LEXIS 167, where the Second District Court of Appeals relied on this consideration to allow a claim against the controlling partner.

{¶ 40} In *Citizens*, *supra*, Nelson was a "controlling shareholder" who breached his fiduciary duty to Ross. Nelson was considered "controlling" because he was the president, treasurer and manager, and he and his wife handled the books, records, and

11.

bank account, paid the subcontractors, suppliers, and creditors, and negotiated contracts and actively participated in the day-to-day operation of the company. *Id*. at *5.

{¶ 41} Moreover, throughout the company's existence, Ross, Nelson, and Nelson's wife all loaned it money in his or her individual capacity. In 1991, the company went out of business and only Ross was left owed debt because Nelson, as treasurer, paid back money he and his wife were owed from H&N's remaining funds. Ross then successfully sued Nelson alleging this failure to pay him back to be a breach of fiduciary duties.

{¶ 42} Here, we find appellee was not alleged to be more of a controlling partner than appellant. To the contrary, it was appellant and his wife who admittedly ran the day-to-day operations of H&N, and as an equal partner we find appellant had as much right and opportunity to exercise control over any judgment exercised by H&N as had appellee.

{¶ 43} However, we look again to *Heaton*, 193 Ohio App.3d 770, 2011-Ohio-2090, 954 N.E.2d 165, for another angle at the issue. Appellee, similarly to Rohl in *Heaton*, was alleged to have operated the same type of business as H&N after leaving the company, to have used H&N employees and equipment for the benefit of him and his other company, and to have assisted the same potential customers as those of H&N, all while maintaining an interest in an undissolved H&N. *See Heaton* at ¶ 59, *supra*.

{¶ 44} Accordingly, we find this second consideration weighs neutral in our direct-claim analysis.

12.

(3) On Going Concern

**{¶ 45}** Lastly, we consider whether the company is an ongoing concern.  *See Kable* at *17, S.D.Ohio No. 07-CV-1131, 2008 U.S. Dist. LEXIS 23974, *supra*.

**{¶ 46}** Here, we find H&N is not.  Specifically, the record supports the parties ceased working together in late 1999, and that H&N was enjoined from operation in 2011.  We find this third consideration, thus, weighs in favor of allowing a direct claim.

**{¶ 47}** Accordingly, under these facts and based on the foregoing considerations, we find a direct action against appellee was appropriate.

<b>Assignment of Error No. 1</b>

**{¶ 48}** In his first assignment of error, appellant contends the trial court erred in granting appellee's motion for directed verdict because there was substantial, competent evidence in his favor so that reasonable minds might reach a different conclusion.  Appellee counters, asserting the trial court properly granted the directed verdict.

**{¶ 49}** Civ.R. 50(A)(1) provides that a motion for directed verdict "may be made on the opening statement of the opponent, at the close of the opponent's evidence or at the close of all the evidence."  Civ.R. 50(A)(4) follows with:

> When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party,

13.

the court shall sustain the motion and direct a verdict for the moving party

as to that issue.

*See*, *e.g.*, *Howell v. Dayton Power & Light Co.*, 102 Ohio App.3d 6, 13, 656 N.E.2d 957 (4th Dist.1995). A de novo standard is applied in reviewing a trial court's ruling on a motion for directed verdict under Civ.R. 50. *See Kassmakis v. Dasani*, 6th Dist. Lucas No. L-04-1041, 2004-Ohio-6463, ¶ 9.

{¶ 50} We first note that appellant's counterclaims below were for breach of fiduciary duty, conversion, and civil conspiracy. On appeal, appellant only challenges the trial court's denial of the claim for breach of fiduciary duty. Consequently, he has waived any challenge to the disposition of his counterclaims for conversion and civil conspiracy. Thus we proceed, addressing only his claim for breach of fiduciary duty. "One asserting a claim of breach of fiduciary duty must establish the existence of a fiduciary duty, breach of that duty, and injury proximately caused by the breach." *Newcomer v. Natl. City Bank*, 2014-Ohio-3619, 19 N.E.3d 492, ¶ 9 (6th Dist.).

{¶ 51} Here, we find appellee certainly owed appellant a fiduciary duty while he was a partner, director, officer and shareholder of H&N. On appeal, appellant explicitly highlights appellee's director and shareholder statuses to establish this duty and breach. *See*, *e.g.*, *Frick v. Frick*, 6th Dist. Wood No. WD-03-075, 2004-Ohio-6898, ¶ 102; *Burns v. Burns Iron & Metal Co.*, 6th Dist. Sandusky No. S-12-024, 2013-Ohio-2024, ¶ 18 ("It is well-settled that shareholders in a closely held corporation 'owe one another a fiduciary duty to act in good faith and refrain from self-dealing.'").

14.

**{¶ 52}** We agree. Moreover, with respect to breach, appellant specifically claims that appellee laid off employees to the detriment of H&N, actively competed with H&N, and usurped business opportunities available to H&N.

**{¶ 53}** Appellee contends the employees were at-will and actually decided to not continue working for H&N, and that appellant failed to demonstrate with evidence that appellee's alleged competing or usurping opportunities caused injury or damages.

**{¶ 54}** Viewing the record at the close of appellant's evidence most favorable to him, we find appellee breached his fiduciary duties of good faith and to refrain from self-dealing. Appellee nevertheless argues that, despite any breach of fiduciary duties, appellant failed to prove with certainty the amount of monetary damages he was entitled to as a result of appellee's acts or omissions.

**{¶ 55}** We first analyze whether appellant, before closing of his evidence at trial, established that appellee proximately caused injury or monetary damages. "Proximate cause 'is often difficult of exact definition as applied to the facts of a particular case.'" *Morgan v. Ramby*, 12th Dist. Warren Nos. CA2010-10-095, CA2010-10-101, 2012-Ohio-763, ¶ 25, citing *Young v. Hollins*, 12th Dist. No. CA89-11-099, 1991 Ohio App. LEXIS 178, 1991 WL 6361, * 4 (Jan. 22, 1991). "Nevertheless, while oftentimes difficult to define, the proximate cause of an event is generally thought of as 'that which in a natural and continuous sequence, unbroken by any new, independent cause, produces that event and without which that event would not have occurred.'" *Id.*, citing *Wilson v.*

15.

*AC & S, Inc.*, 169 Ohio App.3d 720, 2006-Ohio-6704, 864 N.E.2d 682, ¶ 106 (12th Dist.).

{¶ 56} We look to *Morgan* where the Twelfth District Court of Appeals held that no damages were proximately caused despite a shareholder/director/officer breaching his fiduciary duties by leaving his company without winding up its affairs and by failing to participate or assist in defending lawsuits brought against the company. *Id.* at ¶ 26.

{¶ 57} Morgan and Ramby were each 50 percent shareholders of a home-construction business. *Id.* at ¶ 2. Their relationship eroded and Ramby separated from the business, which at that time left Morgan to deal with several disgruntled clients, unpaid invoices, mechanics liens, and lawsuits. *Id.* at ¶ 5. Morgan filed claims against Ramby for, among others, breach of fiduciary duties. *Id.* at ¶ 6. The trial court found Ramby could be liable for breaching fiduciary duties owed to both Morgan and the company for failing to formally resign and refusing to cooperate in defense of the litigation. *Id.* at ¶ 10. Despite this breach element being met, however, the trial court held that Morgan only proved the breach proximately resulted in $42,972.70 damages, which was for incurred legal fees. *Id.* at ¶ 26.

{¶ 58} The *Morgan* appellate court affirmed that Ramby's acts were "unbecoming of an otherwise prudent businessman," and reflected "a reckless disregard for [the business's] corporate interests." *Id.* The appellate court specifically found, "[t]o simply walk away from the situation, as Ramby did, demonstrates a lack of good faith and violates the fiduciary duty owed to [the business] and Morgan." *Id.* The court then

16.

turned "to the question of whether Morgan and [the business] have been damaged as a proximate result of Ramby's conduct," and answered it in the negative. *Id*. at ¶ 27. The court stated, "while Ramby's assistance in defending against the lawsuits may have proved beneficial, it simply cannot be said that his departure proximately caused" $42,972.70 in attorney fees. *Id*. The court also affirmed that Morgan failed to show Ramby's acts resulted in other damages.

{¶ 59} Likewise, in this case we cannot say appellant has shown a causal link between appellee's acts and resulting injury or damages. We find as a matter of law pursuant to Civ.R. 50(A)(4), insufficient evidence and reasonable minds could only come to the conclusion that appellee did not cause damages to appellant. The damages appellant requested in his counterclaims were for compensatory damages for a "disgorgement of all profits derived," for punitive damages "in an amount to be determined at trial," and for "interest, costs, attorney's fees and such other legal and equitable relief as this Court deems proper."

{¶ 60} Based on our review of the evidence below, we cannot agree appellee proximately caused, in a natural and continuous sequence, unbroken by any new, independent cause, any monetary damages appellant may have suffered. Even viewing the evidence most favorably to appellant, we find his actions were new, independent causes of the claimed damages to H&N and himself. Specifically, and based on his own testimony, we find appellant essentially terminated appellee and forced his resignation, locked appellee out of H&N's affairs and records, terminated appellee's company credit

17.

card and access to H&N's bank account, turned off appellee's company phone and pager, blocked appellee from H&N jobs and profits, all while increasing appellant and his wife's salaries and bonuses and completely taking dominion over the company and its profits without sharing.

{¶ 61} All this was done without winding up the affairs of the company or buying out appellee, even after the two partners had discussed not continuing in the business together. We find that had appellant wound up the affairs or purchased appellee's shares in H&N before the breaches of fiduciary duties began, he and H&N would not have suffered damages as a result. Both parties could have continued on freely without breaching any duty owed to the other partner.

{¶ 62} Therefore, we first hold that even viewing the record in a light most favorable to appellant does not result in this court concluding there is sufficient evidence to support that appellee caused harm in a natural and continuous sequence, unbroken by any new, independent cause, especially not to the degree necessary to warrant punitive damages.

{¶ 63} Furthermore and with respect to the other prayed-for damages, again, we find appellant's own testimony supports that he was an independent, intervening, and contributing cause of the lost opportunity and profits. We find appellant failed to show that without appellee's acts his damages would not have occurred.

{¶ 64} Accordingly, we find that appellant's first assignment of error is not-well taken and is denied.

18.

**Assignment of Error No. 2**

{¶ 65} In the second assignment of error, appellant argues the trial court erred in failing to grant his motion for a new trial where the issued judgment was contrary to law. Appellee contends the court correctly denied the motion for a new trial.

{¶ 66} Civ.R. 59(A)(7) states that "[a] new trial may be granted to all or any of the parties and on all or part of the issues upon" showing that "[t]he judgment is contrary to law."

{¶ 67} We review the denial of a motion for a new trial brought under Civ.R. 59(A)(7) de novo. *See Moore v. Moore*, 6th Dist. Erie No. E-17-011, 2018-Ohio-1545, ¶ 14.

{¶ 68} Here, appellant argues he is entitled to a new trial for essentially the same reasons he claims to be entitled to withstand the directed verdict. He therefore argues that the October 25, 2017 judgment memorializing the court's grant of directed verdict was contrary to law. We disagree for the reasons stated above.

{¶ 69} Accordingly, we find no merit in appellant's second assignment of error.

**Conclusion**

{¶ 70} The January 19, 2018 judgment of the Erie County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Arlene Singer, J.                            _____
                                                                JUDGE


Christine E. Mayle, P.J.                     _____
CONCURS AND WRITES                                              JUDGE
SEPARATELY.


Gene A. Zmuda, J.                            _____
CONCURS IN DECISION ONLY                                        JUDGE
AND WRITES SEPARATELY.


**MAYLE, P.J.**

**{¶ 71}** I concur with the majority decision.  I write separately to emphasize my view that appellant was entitled to bring a direct claim against appellee—even though appellant did not establish that appellee was the sole "controlling" shareholder—because it would have been "a considerable waste of judicial resources" to require appellant to

pursue a derivative claim on behalf of a close corporation that is no longer in operation. *Gensemer v. Hallock,* 125 Ohio App.3d 84, 92, 707 N.E.2d 1156 (9th Dist.1997).

{¶ 72} The Ninth District's opinion in *Gensemer* is particularly instructive. In that case, the court concluded that the trial court properly allowed a direct fiduciary-duty claim by Richard and Paula Gensemer (who owned 50 percent of a close corporation) against Macy and Clare Hallock (who owned the other 50 percent) even though the Gensemers did not establish that they suffered separate and distinct injury, or that the Hallocks were the "controlling" shareholders. *Id.* at 91. The court stated:

> To require the Gensemers now to pursue a derivative action for [damage incurred during] the years preceding dissolution would seem a considerable waste of judicial resources. The issues in either case would be identical. In a situation such as this, then, where there is a close corporation with only four shareholders, where the corporation has already been dissolved, and where the issues involved are not terribly complex, we cannot say the lower court errs in allowing a former shareholder to pursue a direct action against another former shareholder. *Id.* at 92.

{¶ 73} I believe that the Ninth District's reasoning in *Gensemer* applies with equal force in this case.[1] Moreover, *Gensemer* is in line with other Ohio courts that have

---

[1] In truth, the reasoning of *Gensemer* arguably applies with even more force here given that—as the majority concludes—the appellant *did* allege a "separate and distinct" injury in this case.

21.

considered the relevant issue here—i.e., the propriety of a direct fiduciary-duty claim by a 50 percent coequal shareholder against the other 50 percent coequal shareholder of a close corporation—although, in most of those cases, the impact of the corporation's ongoing status (or lack thereof) appears to have been an implicit, rather than explicit, consideration.

{¶ 74} In *DeHoff v. Veterinary Hosp. Operations of Cent. Ohio, Inc.*, 10th Dist. Franklin No. 02AP-454, 2003-Ohio-3334, ¶ 83, the court found that the trial court did not err by allowing appellee, a 50 percent coequal shareholder, to assert a claim against the other shareholder for "breach[ing] a fiduciary duty owed directly to him by failing to assist with the dissolution and winding up the affairs of the corporations * * * [because] the usual concerns that generally preclude a shareholder from bringing an individual action are not present * * *."

{¶ 75} In *Stumpff v. Harris*, 2d Dist. Montgomery No. 21407, 2006-Ohio-4796, ¶ 57, a case involving judicial dissolution of a close corporation, the court found that a 50 percent coequal shareholder "is not barred from bringing a direct cause of action against [the other] for breach of fiduciary duty"—albeit without extensive discussion.

{¶ 76} In *Citizens Fed. Bank v. Chateau Constr. Co., Inc.*, 2d Dist. Montgomery No. 13902, 1994 Ohio App. LEXIS 167 (Jan. 19, 1994), although the court found that a 50 percent coequal shareholder could bring a direct claim against the other shareholder because there was evidence that the defendant-shareholder was the "controlling

shareholder," *id.* at 5, it is noteworthy that the lawsuit in that case was filed after "the corporation went out of business." *Id.* at 3.

{¶ 77} Similarly, in *Heaton v. Rohl*, 193 Ohio App.3d 770, 2011-Ohio-2090, 954 N.E.2d 165 (11th Dist.), although the court found that a 50 percent shareholder of a close corporation could sue the other shareholder directly because, in part, the defendant-shareholder "possessed unique, supervening control" over the corporation, *id.* at ¶ 57, the court also found that the plaintiff-shareholder arguably suffered "injuries separate and distinct" from the other shareholder who was alleged to have "unilaterally caused [the corporation] to cease operations." *Id.* at ¶ 56, 59.

{¶ 78} Finally, in *Kable v. Trinity Fin. Corp.*, S.D.Ohio No. 07-CV-1131, 2008 U.S. Dist. LEXIS 23974, 17 (Mar. 11, 2008), the federal district court reviewed Ohio case law and concluded that "Ohio courts permit[] direct claims in lieu of derivative actions * * *" where the close corporation "no longer existed." The federal court then refused to allow a direct claim because the plaintiff did not allege separate and distinct injury, and because the corporation at issue "remain[ed] a going concern." *Id.*

{¶ 79} In light of the foregoing precedent, I believe that appellant's direct action against appellee was appropriate because their closely-held corporation, H&N, was no longer in operation. For me, that is the determinative factor in this case.[2]

---

[2] I also note that appellant's "separate and distinct" injury—as alleged—necessarily depends upon the corporation's ultimate collapse. That is, by alleging that appellee took illegitimate actions to usurp all of H&N's business opportunities, which (according to appellant's allegations) caused H&N's eventual downfall, appellant essentially alleged

23.

{¶ 80} And, I agree with the majority that, although the appellant properly *alleged* a direct claim against appellee, the trial court correctly granted a directed verdict in appellee's favor on that claim because, under the facts that were admitted into evidence, appellant did not prove that appellee's conduct was the proximate cause of any damage that appellant may have suffered.

**ZMUDA, J, concurring in decision only.**

{¶ 81} Because I disagree with the majority's determination regarding the propriety of a direct action, but otherwise agree with the conclusion that the trial court appropriately granted a directed verdict, I write separately, concurring only with the majority's decision to affirm the trial court's judgment.

{¶ 82} In addressing the appropriateness of a direct claim by appellant, the majority applied the factors articulated in *Crosby v. Beam,* 47 Ohio St.3d 105, 548 N.E.2d 217 (1989). Despite finding no separate and distinct injury suffered by appellant, and finding that appellant and his wife, not appellee, controlled the corporation, the majority determined a direct claim to be proper. However, analysis regarding direct

_____

that appellee deprived him of "an equal opportunity to benefit" from H&N. *See Crosby v. Beam*, 47 Ohio St.3d 105, 548 N.E.2d 217 (1989).

24.

versus derivative claims is unnecessary, as the finding regarding damages is dispositive of all matters on appeal.

{¶ 83} The trial court granted appellee's motion for directed verdict, finding insufficient evidence to demonstrate appellee's conduct proximately caused damages to appellant or the corporation. Based upon my review of the evidence in the record, and for the reasons articulated by the majority, the trial court properly granted the motion for directed verdict. Therefore, I concur in the decision to affirm the judgment of the trial court, with any analysis regarding the type of claim asserted of no consequence, based on this conclusion.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.